[No. 52038-5-I. Division One. December 13, 2004.]

A.C., *Appellant*, v. BELLINGHAM SCHOOL DISTRICT, *Respondent*.

512

*Douglas R. Shepherd* (of *Shepherd Abbott Platte*), for appellant.

*Michael B. Tierney* (of *Michael B. Tierney, P.C.*), for respondent.

¶1 Cox, C.J. — A.C. appeals the jury verdict in favor of the Bellingham School District. She first argues that the trial court abused its discretion when it declined to instruct the jury on res ipsa loquitur. A.C. next contends that the trial court abused its discretion when it denied her motion for a new trial based on the District's misconduct during closing argument. Lastly, she maintains that substantial evidence did not support the special verdict. The District cross-appeals, arguing that the trial court erred when it denied its motion for judgment as a matter of law.

¶2 Because one of the required elements for the giving of a res ipsa loquitur instruction—that the accident producing the injury is of a kind that ordinarily does not happen in the absence of someone's negligence—is not present here, the court did not abuse its discretion when it declined to give the proposed instruction. The trial court did not abuse its discretion when it denied A.C.'s motion for a new trial. And substantial evidence supports the jury verdict. Because of our rulings on these issues, we need not reach the issue raised by the District's cross-appeal. We affirm.

¶3 A.C. was a student in Josephine Estrada's first grade class. The students were having a summer birthday piñata party at a local park when Estrada, while attempting to strike the piñata, lost her grip on the piñata bat. The bat flew through the air and struck A.C. in the face. She suffered injuries that were the subject of testimony and other evidence at trial.

¶4 A.C. sued the District, but did not join Estrada, the teacher. The trial court granted the motions in limine of both parties and its order in limine expressly prohibited reference to the District's financial status or available insurance. The court denied the District's motion for judgment as a matter of law at the close of A.C.'s case. The court also denied A.C.'s request for an instruction on res ipsa

loquitur. The jury returned a special verdict finding that the District was not negligent. The court denied A.C.'s motion for a new trial and entered judgment on the verdict.

¶5 A.C. appeals, and the District cross-appeals.

## RES IPSA LOQUITUR

¶6 A.C. contends that the trial court abused its discretion when it refused to instruct the jury on res ipsa loquitur. We conclude that the trial court did not abuse its discretion.

¶7 We review a trial court's decision to reject a party's jury instruction for an abuse of discretion.[1] Negligence is the breach of a duty that proximately causes injury.[2] "Negligence is the failure to act reasonably under the circumstances."[3]

> The doctrine of res ipsa loquitur spares the plaintiff the requirement of proving specific acts of negligence in cases where a plaintiff asserts that he or she suffered injury, the cause of which cannot be fully explained, and the injury is of a type that would not ordinarily result if the defendant were not negligent. In such cases the jury is permitted to infer negligence. The doctrine permits the inference of negligence on the basis that the evidence of the cause of the injury is practically accessible to the defendant but inaccessible to the injured person.[4]

The practical effect of the doctrine of res ipsa loquitur is to rely on circumstantial evidence to permit a presumption or inference of negligence and place upon the defendant the burden of coming forward with evidence rebutting or over-

---

[1] *State v. Picard*, 90 Wn. App. 890, 902, 954 P.2d 336 (citing *State v. Pesta*, 87 Wn. App. 515, 524, 942 P.2d 1013 (1997)), *review denied*, 136 Wn.2d 1021 (1998).

[2] *Keller v. City of Spokane*, 146 Wn.2d 237, 242, 44 P.3d 845 (2002).

[3] *ESCA Corp. v. KPMG Peat Marwick*, 135 Wn.2d 820, 828, 959 P.2d 651 (1998) (citing *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d 119, 122, 426 P.2d 824 (1967)); RESTATEMENT (SECOND) OF TORTS § 282 (1965).

[4] *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324 (2003) (citations omitted).

coming the presumption.[5] Res ipsa loquitur is to be used sparingly and only in exceptional cases.[6]

■ ■ ¶8 Three criteria must be met to apply res ipsa loquitur. First, the incident producing the injury must be the kind that ordinarily does not occur in the absence of negligence. Second, the injury must be caused by an agency or instrumentality within the exclusive control of the defendant. Third, the injury-causing incident must not be due to any contribution on the part of the plaintiff.[7] Only the first criterion is at issue here. There is no dispute that Estrada had exclusive control of the bat and that A.C. did not contribute to her injuries. Whether res ipsa loquitur is applicable is a question of law.[8]

■ ¶9 An injury is of the type that does not occur absent negligence if, "in the abstract, there is a 'reasonable probability' that the incident would not have occurred in the absence of negligence."[9] When this "balance of probabilities in favor of negligence" does not exist, res ispa loquitur does not apply.[10] The fact there was an accident and an injury does not necessarily mean there was negligence.[11] Our courts have described three situations that do not normally occur absent negligence.[12] The second, when general experience teaches that the result would not be expected without negligence, is solely at issue here.

---

[5] *Cusick v. Phillippi*, 42 Wn. App. 147, 155, 709 P.2d 1226 (1985).

[6] *Tinder v. Nordstrom, Inc.*, 84 Wn. App. 787, 789, 929 P.2d 1209 (1997).

[7] *Pacheco*, 149 Wn.2d at 436.

[8] *Pacheco*, 149 Wn.2d at 436.

[9] *Tinder*, 84 Wn. App. at 792.

[10] WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 218 (4th ed. 1971).

[11] *Las v. Yellow Front Stores, Inc.*, 66 Wn. App. 196, 202, 831 P.2d 744 (1992); *see also Rickert v. Geppert*, 64 Wn.2d 350, 355, 391 P.2d 964 (1964) ("The fact that an automobile skids and an accident results does not demonstrate that the conduct of a defendant was such that he created an unreasonable risk of harm to others.").

[12] *Tinder*, 84 Wn. App. at 793 (One, the act causing the injury is "palpably negligent," such as leaving foreign objects in a patient. Two, when general experience teaches that the result would not be expected without negligence. And, three, when proof by experts in an "exotic field" creates an inference that negligence caused the injury.).

¶10 The reasoning in *Tinder* is instructive. In *Tinder*, this court concluded that an injury sustained when an escalator suddenly stopped was not the type of unusual situation that does not normally occur in the absence of negligence because mechanical devices like escalators can wear out or break without negligence.[13] Similarly, we are not persuaded that losing one's grip on a bat used to strike a piñata, without more, is an event that does not ordinarily occur without negligence.[14]

¶11 The reasoning in *Gordon*, although not a res ipsa loquitur case, is also useful. In *Gordon*, a student sued the school district and a teacher for injuries sustained when the boy was struck by a bat that was inadvertently released from the teacher's hands as he was playing baseball.[15] The jury found in favor of the defendants and the boy successfully moved for a new trial on damages only, arguing that the teacher was negligent as a matter of law.[16] Our Supreme Court concluded that the trial court erred by concluding that the teacher was negligent as a matter of law and noted that on this evidence

> the jury could find: (1) that [the teacher], in the light of his experience in playing baseball with the children, did exercise ordinary care under the circumstances; (2) that the risk which he assumed in playing baseball with the children was not an unreasonable risk under the circumstances; and (3) that injury to another, particularly to [plaintiff minor], could not have been reasonably anticipated. On the other hand, in considering these same facts, the jury could find that [the teacher] did not exercise ordinary care under the circumstances as above defined, and that the risk of harm was unreasonable and reasonably foreseeable.[17]

---

[13] *Tinder v. Nordstrom Inc.*, 84 Wn. App. 787, 793-94, 929 P.2d 1209 (1997).

[14] *Cf. Tinder*, 84 Wn. App. at 792-93 ("The mere occurrence of an accident and an injury does not necessarily infer negligence.").

[15] *Gordon v. Deer Park Sch. Dist. No. 414*, 71 Wn.2d 119, 120, 426 P.2d 824 (1967).

[16] *Gordon*, 71 Wn.2d at 120.

[17] *Gordon*, 71 Wn.2d at 125.

Such reasoning suggests that the inadvertent release of a bat that injures another is not the type of scenario that does not occur absent negligence.

¶12 Further support for our conclusion that res ipsa loquitur does not apply here is found in *Rickert*. There, our Supreme Court concluded that the trial court did not err when it instructed the jury that the mere skidding of a car is not evidence of negligence.[18] The court noted: "[t]he fact that an automobile skids and an accident results does not demonstrate that the conduct of a defendant was such that he created an unreasonable risk of harm to others."[19]

¶13 In sum, we read the above cases as support for the proposition that the mere loss of grip on a swinging bat used to strike a piñata, without more, is insufficient to support the giving of a res ipsa loquitur instruction. The "balance of probabilities in favor of negligence" simply does not exist here. The trial court did not abuse its discretion in declining to give the instruction.

¶14 A.C. relies on *Douglas v. Bussabarger*[20] for the proposition that where the inference of negligence is logical, res ipsa loquitur should be applied. In *Douglas*, a woman underwent surgery to repair a stomach ulcer and when she woke up, she was paralyzed from the waist down.[21] The court concluded that "[i]t is clear to us that this typifies those cases in which res ipsa loquitur applies because mankind's general experience and observation teaches that the harmful result probably would not occur in the absence of someone's negligence."[22]

¶15 A.C. also relies on *Pacheco*. In *Pacheco*, a patient sued his dentist for medical malpractice after the dentist drilled on the wrong side of his mouth, resulting in nerve

[18] *Rickert v. Geppert*, 64 Wn.2d 350, 355, 391 P.2d 964 (1964).

[19] *Rickert*, 64 Wn.2d at 355.

[20] 73 Wn.2d 476, 438 P.2d 829 (1968).

[21] *Douglas*, 73 Wn.2d at 477.

[22] *Douglas*, 73 Wn.2d at 482.

damage.[23] Our Supreme Court held that the trial court did not err when it instructed the jury on res ipsa loquitur because it is within the general experience of people that drilling on the wrong side of a patient's mouth would not normally take place absent negligence.[24] The court noted, "a res ipsa loquitur instruction should not be denied to a plaintiff when all of the elements for application of the doctrine are present although there is evidence offered to explain the incident."[25]

¶16 *Douglas* and *Pacheco* do not assist A.C. First, they are factually distinguishable and, despite A.C.'s arguments to the contrary, her injury resulting from an inadvertently released bat is not analogous to injuries sustained in the course of medical or dental procedures. And A.C. fails to cite to any case sufficiently similar to this one in which the doctrine of res ipsa loquitur was applied. Second, the directive in *Pacheco* that the instruction should be given even when the defendant offers some evidence of how the injury may have occurred without negligence does not lead to the conclusion here that a res ipsa loquitur instruction was required. The party requesting the instruction must first show that the injury is of the type that does not occur absent negligence.[26]

¶17 The trial court did not abuse its discretion when it declined to instruct the jury on res ipsa loquitur.

¶18 Nevertheless, A.C. contends that the District failed to explain Estrada's failure to hold on to the bat and therefore the jury should have been instructed that it was the District's burden to explain how the accident was not negligence. But this argument assumes the applicability of res ipsa loquitur. The burden to explain how the accident was not the result of negligence did not shift to the District because res ipsa loquitur does not apply.

---

[23] *Pacheco v. Ames*, 149 Wn.2d 431, 434, 69 P.3d 324 (2003).

[24] *Pacheco*, 149 Wn.2d at 439.

[25] *Pacheco*, 149 Wn.2d at 440.

*Pacheco*, 149 Wn.2d at 440.

## NEW TRIAL

¶19 A.C. argues that the trial court abused its discretion by denying her motion for a new trial based on the District's alleged misconduct during closing argument. We disagree.

¶20 CR 59 provides:

(a) **Grounds for New Trial or Reconsideration.** The verdict or other decision may be vacated and a new trial granted to all or any of the parties and on all or part of the issues when such issues are clearly and fairly separable and distinct, on the motion of the party aggrieved for any one of the following causes materially affecting the substantial rights of such parties:

. . . .

(2) Misconduct of prevailing party . . . ;

. . . .

(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;

(8) Error in law occurring at the trial and objected to at the time by the party making the application; . . .[27]

¶21 We review for abuse of discretion the decision to deny a motion for a new trial.[28] A new trial may be granted based on the prejudicial misconduct of counsel if the movant establishes " 'that the conduct complained of constitutes misconduct (and not mere aggressive advocacy) and that the misconduct is prejudicial in the context of the entire record.' "[29] The movant must have properly objected to the misconduct, and the misconduct must not have been cured by court instructions.[30] A jury is presumed to follow

---

[27] CR 59.

[28] *Aluminum Co. of Am. (ALCOA) v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 537, 998 P.2d 856 (2000).

[29] *ALCOA*, 140 Wn.2d at 539 (quoting 12 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 59.13[2][c][I][A], at 59-48 to 59-49 (Daniel R. Coquillette et al., eds., 3d ed. 1999)).

[30] *ALCOA*, 140 Wn.2d at 539.

the court's instructions.[31] " 'A mistrial should be granted only when "nothing the trial court could have said or done would have remedied the harm done to the defendant." ' "[32]

¶22 A.C. characterizes as misconduct the District's description of this as "the gradually disappearing case" and the District's argument asking the jury to place itself in the position of a party during closing argument. Neither claim is persuasive.

¶23 The District twice referred during closing argument to this as the "disappearing case" and even presented a chart to the jury in which the phrase was used. The District then clarified this description by stating: "[m]y point here, my basic point is that the only action, the only event that is before you now is the slipping of the bat out of Mrs. Estrada's hands." The District observed, referring to instruction number 6,

> this is the instruction from Judge Nichols that eliminates a lot of the other topics that you might have thought about during the course of this case and that we might have seen evidence on . . . Were there enough parent supervisors? Were kids far enough back? Where were the kids located? You might have had all those thoughts going through your mind but those have been eliminated from your consideration.

The District's characterization of jury instruction 6 as eliminating other potential topics for the jury's consideration is not a misrepresentation and is consistent with the instruction.[33]

¶24 In response to A.C.'s objection and argument that this statement implied that the court "did something" to her case, the trial court specifically instructed the jury: "the inference shouldn't be that the court did something with

---

[31] *State v. Hepton*, 113 Wn. App. 673, 685, 54 P.3d 233 (2002), *review denied*, 149 Wn.2d 1017 (2003).

[32] *ALCOA*, 140 Wn.2d at 539 (quoting *State v. Gilcrist*, 91 Wn. 2d 603, 612, 590 P.2d 809 (1979)).

[33] "Minor plaintiff claims that defendant Bellingham School District was negligent in failing, through its agent Josephine Estrada, to hold on to the piñata bat so as to avoid injury to minor plaintiff."

those [the other questions or concerns the jury may have considered during testimony]. This is an inference from the evidence." Following this instruction to the jury, additional discussions between the judge and counsel took place off the record. Back on the record the court further instructed the jury:

> I would tell the jury that after discussions that I have instructed Mr. Tierney and he has done so. He has stricken a phrase ["disappearing case"] from his chart there because I felt it was misleading and he has written another phrase in there and he is arguing to you about inferences that you might be considering that are not in the case at this point.

¶25 We fail to see how this instruction was inadequate to cure the problem. Moreover, these comments do not appear so prejudicial in light of the entire case as to have affected the verdict. Furthermore, any ill effect was countered by the instruction to the jury that the court did not "do something" to A.C.'s case, and noting that the phrase "gradually disappearing" was misleading and inappropriate. We conclude that the trial court did not abuse its discretion when it denied A.C.'s motion for a new trial on this ground.

¶26 A.C next argues that the District improperly asked the jury to place itself in the position of the District. We reject this argument on several grounds.

¶27 The "golden rule" states a standard of conduct to do unto others as you would have them do unto you.[34] Urging the jurors to "place themselves in the position of one of the parties to the litigation, or to grant a party the recovery they would wish themselves if they were in the same position" constitutes an improper "golden rule" argument.[35] This type of argument is improper because "it encourages the jury to depart from neutrality and to decide

---

[34] *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 139, 750 P.2d 1257 (1988).

[35] *Adkins*, 110 Wn.2d at 139.

the case on the basis of personal interest and bias rather than on the evidence."[36]

¶28 A.C. contends that the District violated the prohibition against "golden rule" arguments when it stated:

> And think about really what it boils down to is what's the value of a dollar. What do you have to go through to get your dollars? What do they mean to you when you have them? Think about what it means to you. The number that I want to give you for all of the damages in the case is half of a year of an average worker's pay. If you think that's fifteen thousand or twenty thousand, that's an appropriate number. That's a lot that you go through. If you had that amount of money, what would it mean to you? Would it be a lot of money to you? That's an issue for the jury to decide.

¶29 A.C.'s argument is not persuasive for several reasons. First, she did not object to the argument she now characterizes as an improper "golden rule" statement. For this reason alone, A.C. is not entitled to relief on appeal on this point.[37]

¶30 Second, this was not an improper "golden rule" argument. The District was not appealing to the jury to put themselves in its position and then decide whether they would want to be found guilty of negligence. It was telling the jury to determine what amount of money would compensate A.C. and what that money means to them.

¶31 Finally, A.C. fails to argue how this alleged misconduct was so flagrant and prejudicial that no instruction could have cured it.[38]

---

[36] *Adkins*, 110 Wn.2d at 139.

[37] *See Sommer v. Dep't of Soc. & Health Servs.*, 104 Wn. App. 160, 171, 15 P.3d 664 ("Absent an objection to counsel's remarks, the issue of misconduct cannot be raised for the first time in a motion for a new trial unless the misconduct is so flagrant that no instruction could have cured the prejudicial effect."), *review denied*, 144 Wn.2d 1007 (2001).

[38] *Adkins*, 110 Wn.2d at 142 ("the prejudicial effect of such an argument [golden rule] can be removed by the trial court sustaining a proper and timely objection and then promptly instructing the jury to disregard the improper argument").

¶32 For these reasons, A.C. is not entitled to relief on this ground.

■■■ ¶33 A.C. also contends that her motion for a new trial should have been granted because of the District's violation of an order in limine. We hold that A.C.'s failure to object at the time of the violation of the order in limine bars relief on appeal.

¶34 A.C. moved in limine to exclude any reference to "[the District's] financial status or insurance policy limits, any suggestion that a recovery would come out of the [District's] pocket, or any reference to the [District's] inability to pay full compensation." The court granted the motion.

¶35 " 'The purpose of a motion in limine is to dispose of legal matters so counsel will not be forced to make comments in the presence of the jury which might prejudice his presentation.' "[39] In a situation where a party prevails on a motion in limine and thereafter suspects a violation of that ruling, *the party has a duty to bring the violation to the attention of the court and allow the court to decide what remedy, if any, to direct.*[40] A standing objection to evidence in violation of a motion in limine, preserving the issue for appeal, is allowed *only* to the party losing the motion.[41]

> [W]here the evidence has been admitted notwithstanding the trial court's prior exclusionary ruling, the complaining party [is] required to object in order to give the trial court the opportunity of curing any potential prejudice. Otherwise, we would have a situation fraught with a potential for serious abuse. A party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.[42]

---

[39] *State v. Sullivan*, 69 Wn. App. 167, 170, 847 P.2d 953 (quoting *State v. Kelly*, 102 Wn.2d 188, 193, 685 P.2d 564 (1984)), *review denied*, 122 Wn.2d 1002 (1993).

[40] *Sullivan*, 69 Wn. App. at 171-72.

[41] *Sullivan*, 69 Wn. App. at 171.

[42] *Sullivan*, 69 Wn. App. at 172.

¶36 A.C. did object to the District's statement that the witnesses were "here to get money." The court sustained the objection and instructed the District to start again.

¶37 Thereafter, the District stated: "the plaintiff is here to get money. The witnesses are here to assist in the process of getting money. There is a school district behind Josephine Estrada with deep pockets." A.C. neither objected to nor requested a curative instruction to address this improper comment.

¶38 First, there can be no doubt that the comment violated the order in limine. No one can seriously argue to the contrary.

¶39 Second, A.C.'s failure to object to the quoted language is precisely the situation contemplated in *Sullivan*[43] and illustrates the point of the rule. The failure to object deprived the court of the opportunity to take corrective action at the time of the improper remark. We will not sanction a failure to make a timely objection under these circumstances for it would encourage the type of abuse that the court envisioned in that case. In short, the failure to object to the clear violation of the order in limine is fatal to the claim she now makes on appeal.

## SUBSTANTIAL EVIDENCE

¶40 Next, A.C. argues that the trial court erred when it failed to grant a new trial because substantial evidence did not support the verdict. We disagree.

¶41 Substantial evidence is "evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise."[44]

¶42 The record establishes that safety precautions were an integral part of the party planning. Estrada had the children sit in a large circle around the piñata to try to avoid injury. Parent volunteers were there to assist with the party and supervise the children. Estrada had the parents

---

[43] *State v. Sullivan*, 69 Wn. App. 167, 847 P.2d 953, *review denied*, 122 Wn.2d 1002 (1993).

[44] *Price v. Kitsap Transit*, 125 Wn.2d 456, 466, 886 P.2d 556 (1994).

standing by with bags of candy so that when the piñata did break they could throw candy near the children so they did not all rush toward the piñata and injure themselves or each other. Prior to swinging at the piñata, Estrada instructed the students as a group and individually that they must hold on to the bat while they were swinging.

¶43 A.C. primarily contends that because there was no evidence that the bat was defective, that its handle was slippery, or that Estrada had a physical or mental defect that made gripping the bat difficult, the only possible conclusion that the jury could have reached was that Estrada failed in her duty, and was therefore negligent. This argument fails to demonstrate a lack of substantial evidence to support the jury's verdict.

¶44 Estrada testified that she did not "lose control" of herself or get too enthusiastic on the second swing, but that the piñata bat simply slipped out of her hands. She also testified that she did everything that she could think of to keep the game safe and the bat just slipped out of her hands. Estrada repeatedly spoke to the children about safety and also had the parent volunteers remind the children about safety.

¶45 Estrada's student teacher, Kim Rutledge, testified that the students were instructed to hold on to the bat and were constantly reminded as they each had their turn to hang on to the bat while swinging. Rutledge testified that the bat belonged to Estrada, who had played piñata all her life. Rutledge also testified that no parent present made any other suggestions for safety measures. Rutledge testified that when Estrada was swinging at the piñata she thought that they were exercising the appropriate level of care. She also testified that there was nothing in Estrada's conduct that indicated she was not exercising due care for the safety of her students.

¶46 Substantial evidence supports the jury's verdict that there was no negligence. The trial court did not err in denying A.C.'s motion for a new trial.

¶47 Because of our resolution of the issues raised in the main appeal, we need not reach the District's contention on its cross-appeal that the trial court erred when it denied its motion for judgment as a matter of law.

¶48 We affirm the judgment on the jury verdict.

ELLINGTON, J., concurs.

¶49 BECKER, J. (concurring) — I agree that the court did not err in refusing to give a separate res ipsa loquitur instruction. To understand why, it is helpful to look at the instruction the plaintiff proposed, which is found in Washington's pattern instructions. The instruction is an extension of the routine instruction on circumstantial evidence. If given, it does not require an inference of negligence. It does, however, permit the jury to find that the injury is of a type that would not have occurred if the defendant was using ordinary care under the circumstances. If so, the jury may infer negligence from the circumstances without additional proof that the defendant failed to use ordinary care:

> Evidence may be either direct or circumstantial. Direct evidence is that given by a witness who testifies concerning facts which the witness has directly observed or perceived through the senses. Circumstantial evidence is evidence of facts or circumstances from which the existence or nonexistence of other facts may be reasonably inferred from common experience. The law makes no distinction between the weight to be given either direct or circumstantial evidence. One is not necessarily more or less valuable than the other.
>
> *It is for you to determine whether the circumstances are of such a character as to justify an inference that the injury or damage would not have occurred if ordinary care had been exercised by the defendant.*
>
> *When an instrumentality which produces injury or damage is under the control of a defendant at the time of injury or damage to minor plaintiff and the injury or damage which occurred would ordinarily have not resulted if the defendant had used*

*ordinary care, then, in the absence of satisfactory explanation, you may infer, but you are not required to infer, that the defendant was negligent.*[45]

¶50 The trial court in this case did give the pattern instruction on circumstantial evidence, 6 *Washington Pattern Jury Instructions: Civil* (WPI) 1.03 (5th ed. 2005). By refusing to give two additional paragraphs found in WPI 22.01, the trial court decided as a matter of law that letting go of the bat, under the circumstances, could have happened without the teacher being negligent. While the wording of the instruction sounds as if this assessment is a factual matter that should be left to the jury, it is not an instruction to be routinely given. The court exercises substantial control to assure that the doctrine of res ipsa will be "sparingly applied, in peculiar and exceptional cases, and only where the facts and the demands of justice make its application essential." *Morner v. Union Pac. R.R. Co.*, 31 Wn.2d 282, 293, 196 P.2d 744 (1948).

¶51 Historically, the situation in which the court will spare the plaintiff the necessity of proving specific acts of negligence is when evidence of the cause of the injury is not realistically accessible to the injured person, but is available to the defendant. *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324 (2003). The quintessential example is *Byrne v. Boadle*, 159 Eng. Rep. 299 (1863). In that case, a barrel of flour rolled out of a window in defendant's warehouse onto the plaintiff, who was walking on the public street below and was knocked unconscious by the blow. No one who witnessed the event could say how the barrel got loose. Plaintiff alleged that the defendant's employees were engaged in trying to lower the barrel, but was unable to prove it. The court held the occurrence of the incident itself was evidence of negligence:

---

[45] 1 Clerk's Papers at 122 (emphasis added). This is 6 *Washington Pattern Jury Instruction: Civil* (WPI) 22.01 (5th ed. 2005), Res Ipsa Loquitur—Inference of Negligence. The first paragraph of the instruction is the same as WPI 1.03, Direct and Circumstantial Evidence.

The learned counsel was quite right in saying that there are many accidents from which no presumption of negligence can arise, but I think it would be wrong to lay down as a rule that in no case can presumption of negligence arise from the fact of an accident. Suppose in this case the barrel had rolled out of the warehouse and fallen on the plaintiff, how could he possibly ascertain from what cause it occurred! It is the duty of persons who keep barrels in a warehouse to take care that they do not roll out, and I think that such a case would, beyond all doubt, afford primâ facie evidence of negligence. A barrel could not roll out of a warehouse without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove negligence seems to me preposterous. So in the building or repairing a house, or putting pots on the chimneys, if a person passing along the road is injured by something falling upon him, I think the accident alone would be primâ facie evidence of negligence. Or if an article calculated to cause damage is put in a wrong place and does mischief, I think that those whose duty it was to put it in the right place are primâ facie responsible, and if there is any state of facts to rebut the presumption of negligence, they must prove them. The present case upon the evidence comes to this, a man is passing in front of the premises of a dealer in flour, and there falls down upon him a barrel of flour. I think it apparent that the barrel was in the custody of the defendant who occupied the premises, and who is responsible for the acts of his servants who had the controul of it; and in my opinion the fact of its falling is primâ facie evidence of negligence, and the plaintiff who was injured by it is not bound to shew that it could not fall without negligence, but if there are any facts inconsistent with negligence it is for the defendant to prove them.

*Byrne*, 159 Eng. Rep. at 301.

¶52 This case is unlike *Byrne v. Boadle* because the events leading up to the injury with the piñata bat occurred out in the open for all to see. Whatever negligence there may have been occurred in plain view of the plaintiff and other witnesses. There was no imbalance of knowledge between defendant and plaintiff as to how the injury happened. The plaintiff was not precluded from arguing, and in fact did argue, that the jury could infer negligence

from the circumstances. From the simple fact that the teacher lost her grip on the piñata bat while surrounded by a group of first graders, the jury might well have concluded that the teacher was not exercising ordinary care, using the routine set of instructions that were given. In such a situation justice does not demand that the plaintiff's duty to prove negligence be lightened by allowing the res ipsa loquitur instruction.