**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| CORY SANDERS,<br><br>                 Appellant,<br><br>       v.<br><br>ORHAN MIREL and SCOTT PORTER,<br><br>             Respondents. | No. 87950-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — Cory Sanders appeals from the trial court's judgment on a jury verdict in favor of Orhan Mirel and Scott Porter. Sanders asserted negligence claims against Mirel and Porter for damages allegedly caused by an automobile collision in which Mirel rear-ended Sanders while driving a vehicle owned by Porter and a physical altercation with Mirel following the collision. After a trial in which the jury found Sanders responsible for 100 percent of the total combined fault that caused his damages, Sanders filed a motion for a new trial under CR 59(a) based on alleged misconduct of both Mirel and his attorney during trial. The trial court denied Sanders' motion. Because the trial court did not abuse its discretion in so ruling, we affirm.

I

The automobile collision and physical altercation at issue here occurred after Mirel drove a car owned by his roommate, Porter, to a Starbucks drive-

through in Gig Harbor on May 11, 2020. While Mirel was waiting in the drive-through line, Sanders cut in front of him, and Mirel then rear-ended Sanders. Sanders exited his car, pounded his fist on the hood of Mirel's car, and approached Mirel's door. Mirel then exited his car and a physical altercation occurred between the two.

During this altercation, Sanders fell and hit his head on the curb. Police officers responded to the scene and characterized the event as "mutual combat" relating to an "argument stemming from one party cutting in front of another at the Starbucks drive thru." Sanders was taken to Tacoma General Hospital, and medical staff later determined he had sustained a traumatic brain injury.

Sanders filed a complaint against Mirel and Porter for his injuries. As to Mirel, Sanders alleged negligent driving resulting in a collision and added, "Mirel is also liable for injuries [Sanders] sustained as a result of the ensuing negligent physical contact with [Sanders] as a result of the rear-end collision."[1] As to Porter, Sanders alleged that Mirel's negligent acts and omissions "were done for and on behalf of [Porter], the registered owner[] of the [vehicle] that [Mirel] was driving."

The matter eventually proceeded to a jury trial. Following trial, the jury found by special verdict that Porter was not negligent, Mirel was negligent, Mirel's negligence caused past economic damages totaling $77,242.96, Sanders was contributorily negligent, and Sanders was responsible for 100 percent of the total combined fault that caused his damages. The jury further found that no damages

---

[1] Because the issue is not presented for decision, we assume without deciding that a personal injury plaintiff can plausibly allege "negligent physical contact" as a result of "mutual combat."

were caused solely by Mirel's intentional acts. Thus, Sanders was wholly unsuccessful at trial.

Sanders then filed a motion for a new trial under CR 59(a), arguing Mirel made "purposeful attempts to deny [Sanders] a fair [t]rial." His motion asserts numerous such "purposeful attempts," each of which is described in the discussion below. The trial court denied Sanders' motion and entered judgment on the jury verdict in favor of Mirel and Porter. This timely appeal followed.

II

Sanders argues the trial court abused its discretion in denying his motion for a new trial under CR 59(a). We disagree.

CR 59(a) governs motions for a new trial and provides in relevant part as follows:

> On the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
>
> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
>
> (2) Misconduct of prevailing party . . . ; or
> . . . .
>
> (9) That substantial justice has not been done.

Consistent with the above provisions, Sanders argues that the misconduct of both Mirel and his attorney, and the corresponding irregularity in the proceedings, materially affected his substantial rights such that justice has not been done.

We review orders denying a motion for a new trial for an abuse of discretion. *Teter v. Deck*, 174 Wn.2d 207, 215, 274 P.3d 336 (2012). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *Id.* (citing *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). "Particularly where the claimed grounds for a new trial involve the assessment of occurrences during the trial and their potential effect on the jury, we will accord great deference to the considered judgment of the trial court in ruling on such a motion." *Levea v. G.A. Gray Corp.*, 17 Wn. App. 214, 226, 562 P.2d 1276 (1977); *see also Teter*, 174 Wn.2d at 223. On review, "we will not substitute our own judgment for the trial court's judgment in evaluating the scope and effect of that misconduct." *Teter,* 174 Wn.2d at 226.

A new trial based on the alleged misconduct of counsel may be granted in narrow circumstances:

> A new trial may be granted based on the prejudicial misconduct of counsel if the conduct complained of constitutes misconduct, not mere aggressive advocacy, and the misconduct is prejudicial in the context of the entire record. The misconduct must have been properly objected to by the movant and . . . must not have been cured by court instructions. "A mistrial should be granted only when nothing the trial court could have said or done would have remedied the harm done to the defendant."

*Kuhn v. Schnall*, 155 Wn. App. 560, 576-77, 228 P.3d 828 (2010) (quoting *A.C. v. Bellingham Sch. Dist.*, 125 Wn. App. 511, 522, 105 P.3d 400 (2004)). As *Kuhn* confirms, such relief is not warranted where the alleged misconduct is or could have been "cured by court instructions." *Id.*[2] Relatedly, "jurors are presumed to

---

[2] *See also Johnson v. Howard*, 45 Wn.2d 433, 444, 275 P.2d 736 (1954) (new trial based on comments "concerning the honesty of [counsel]" not warranted where comments are "neutralize[d]" by curative instructions); *Anderson v. Dobro*, 63 Wn.2d 923, 928-29, 389 P.2d 885 (1964) (finding

follow the court's instructions." *Coogan v. Borg-Warner Morse Tec Inc.*, 197 Wn.2d 790, 808, 490 P.3d 200 (2021) (quoting *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012)).

Sanders asserts a new trial was warranted under CR 59(a) because both Mirel and his attorney committed misconduct below. We address each of Sanders' arguments in turn.

A

Sanders' principal argument on appeal is that Mirel committed misconduct by attacking Sanders' counsel and accusing him of altering or withholding evidence. This argument fails, as the trial court sustained Sanders' objections and gave appropriate curative instructions.

Two incidents occurred during Mirel's testimony that necessitated curative instructions. First, when Mirel was asked whether an exhibit was his handwritten statement to police officers at the scene, Mirel commented that the exhibit was missing "a lot" of his statement. The jury was excused and the trial court agreed to give a curative instruction to ensure the jury did not get the impression that the exhibit was altered in any manner other than to redact the word "assault," as had been agreed during pre-trial motions practice. The curative jury instruction provided, "Exhibit 3-A contains all information and nothing relevant or admissible has been removed. You are to disregard any comments of Mr. Mirel to the contrary." The court also admonished Mirel, "You are to stop interrupting, you are

___

"no abuse of discretion in the trial court's denial of appellant's motion for a new trial . . . [where] the instruction given was sufficient to remove any prejudice generated by the comment of respondent's counsel").

to stop speaking over people, and you are to wait until Mr. Barcus is done with his questions before you answer."

Second, another curative instruction was required as a result of the following exchange between Mirel and Sanders' counsel:

Q. Mr. Mirel, there seems to be a distinct change in the method and manner in which you are responding to questions today versus yesterday. Why is that, sir?

A:  The answer to that is today I'm not feeling threatened by you.

Q:  If I ask you a question, the truth is the truth; correct?

A: Truth is a truth, that's for sure, yes.

Q: And I have purposely been respectful to you during the course of your testimony, have I not?

A: No. You twisted the words, like killing, beating him, or hitting him with -- so I felt threatened by that, so I couldn't trust you . . . .
    . . . .

Q: When we looked at the video clips [of your deposition], I reminded you of your words, did I not?

A: Those video clips were clipped, just the part you wanted to show, and you wouldn't let it show after the rest of it, so I felt intimidated by you.

Thus, in addition to attacking Sanders' counsel as threatening, Mirel indicated counsel was hiding relevant testimony.

This accusation was then repeated several minutes later.  While attempting to impeach Mirel, Sanders' counsel compared Mirel's testimony to his earlier statements to the police and his interrogatory responses, asking whether he had "a new story" "four and a half years later."  Mirel responded, "Is this a new story? No.  Run your show.  I'll show you how I explained it to you in your deposition.  You

didn't want the jury to see that. That's why it's clipped." The jury was excused, and the court then admonished Mirel, "I am sick and tired of your argumentative responses and basically accusing counsel now of hiding things in front of the jury on multiple occasions."

The trial court then turned to Mirel's counsel and instructed him to speak with Mirel "about what is appropriate in court and what is not." The court added:

> Here's my concern . . . . Yesterday we had to read the jury a curative instruction when your client told the jury that [Mirel's counsel] had redacted some things from that police statement, which wasn't true, aside from the word 'assault' at the top, which -- by agreement of the parties.
> . . . .
>
> Mr. Mirel is entitled to answer the questions in the way that he sees fit as long as he's responding to the questions. But the issue is he's not responding to the questions. And again twice just now he told the jury that counsel was hiding things in the deposition.
>
> And so that is not something that this Court is going to tolerate from Mr. Mirel in light of the record.

After the trial court admonished both Mirel and his counsel, the jury was brought back into the courtroom and instructed by the trial court, "You are instructed to disregard Mr. Mirel's last three answers, including the allegations that [Sanders'] counsel is in any way hiding or withholding evidence."

As noted, the trial court denied Sanders' motion for a new trial based on the above comments. At the hearing on Sanders' motion, the trial court explained its rationale, "my question is were the curative instructions satisfactory to this Court such that it did not impact the ability for the plaintiff to receive a fair trial? And I believe that those instructions were satisfactory." The trial court continued:

- 7 -

> [Sanders] suggested that . . . justice hadn't been done. But justice is not a result. It's not a moment in time. It's a process. And in looking at the process of the trial from the beginning to the end . . . did [Sanders] receive a fair trial? And I do believe they did receive a fair trial.

Addressing Mirel's alleged misconduct, the trial court continued:

> being hot-headed and volatile is not a basis for a new trial unless it has impacted and hindered the plaintiff's ability to get a fair trial . . . that's what I have to look at. And what I focused on was the two instances in which Mr. Mirel suggested that [Sanders'] counsel was hiding something.

The court added, "In both cases . . . I took those very seriously. And the curative instructions that were fashioned in each instance were direct and they were unambiguous as to what the jury was ordered to do." Finally, the trial court also noted, "the only person that Mr. Mirel prejudiced with his actions was himself. I felt that his volatility and his conduct really fed into [Sanders'] theory of the case with the nature of the incident itself."

The trial court did not abuse its discretion in denying Sanders' motion for a new trial. As discussed above, new trials are not granted where improper comments are neutralized by curative instructions. Here, the record discloses a trial judge patiently attempting to cope with a difficult defendant who was at times unresponsive and argumentative. The trial court managed the trial with effective curative instructions and gave several admonitory instructions to Mirel and his attorney. Particularly given the great deference we afford the trial court in evaluating the nature and effect of the alleged misconduct, the record amply supports the trial court's denial of Sanders' motion for a new trial.

Sanders' reliance on *Storey v. Storey*, 21 Wn. App. 370, 585 P.2d 183 (1978), is misplaced. In *Storey*, the trial court made findings of fact that two witnesses had introduced prejudice into the proceedings that "no instruction or admonition to the jury could remove," thus requiring a new trial. *Id*. at 372. Here, in contrast, the trial court appropriately found, "while the court finds that defendant Mirel's misconduct was intentional and flagrant, the court also finds that plaintiff received a fair trial." The trial court also addressed *Storey* at the hearing on Sanders' motion for a new trial, contrasting the circumstances in this case with the trial court's express ruling in *Storey* that a curative instruction was not likely to cure the alleged issue there, and finding that such circumstances were distinguishable. Because the trial court's reasoning here is based on tenable grounds and tenable reasons, it did not abuse its discretion in Sanders' motion for a new trial based on Mirel's alleged misconduct.

B

Next, Sanders argues Mirel's counsel also committed misconduct when they "attack[ed]" the trial court's jury instructions by calling them "red herrings" during closing arguments and, in so doing, purportedly "invited the jury to engage in 'jury nullification.'" This claim is meritless.

Mirel's attorney called three of the trial court's 37 jury instructions "red herrings" during closing argument. Instruction number 10 stated, "It is the duty of every person using a public street or highway to exercise ordinary care to avoid placing himself or herself . . . in danger and to exercise ordinary care to avoid a collision." Mirel's counsel argued:

> [T]his [instruction] is provided to you as a red herring. Maybe something -- some reason to distract you from why we're actually here, from what the rules are, what the issues are that you need to pay attention to. Just because this is a law does not mean -- this is a public street or highway. We're not on a public street or highway. We're in a private lot.  None of this happened on a public street or highway.
>
> So this is not necessarily applicable, but, you know, it's here. It's for you to read, whether you pay attention to it or not, and that is my very artistic fish for you to remember.

Importantly, Sanders' counsel did not object.

Next, Mirel's attorney characterized instruction 15 as a "herring."  That instruction stated:

> Every person using a public street or highway has the right to assume that other persons thereon will use ordinary care and will obey the rules of the road and has a right to proceed on such assumption until he or she knows, or in the exercise of ordinary care should know, to the contrary.

Mirel's counsel argued:

> [T]his is another one of these bad guys . . . they're getting worse, the herrings . . . again, we're not on a public street or highway.  Obviously we want people to behave properly in the private space too . . . .  [T]his is the law, but it doesn't matter here.

Again, Sanders' counsel did not object.

Washington courts have held, "absent an objection to counsel's remarks, the issue of misconduct cannot be raised for the first time in a motion for a new trial unless the misconduct is so flagrant that no instruction could have cured the prejudicial effect."  *Sommer v. Dep't of Soc. & Health Servs.*, 104 Wn. App. 160, 170-71, 15 P.3d 664 (2001).  Here, no contemporaneous objections were made as to the foregoing remarks so the above standard of review applies.  Yet Sanders' briefing does not articulate how such remarks could not have been cured by

instructions. Accordingly, we reject Sanders' arguments as to the first two red-herring comments at issue.

The third red-herring comment at issue relates to instruction 18, which stated in part, "[a] statute provides that a driver shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the street or highway." Mirel's attorney referred to this instruction in closing argument as "another distraction, another red herring that does not necessarily apply in this case. It is the law -- again, all of these are the law, but it's not here." Here, Sanders' counsel objected, his objection was sustained, and the jury was instructed to disregard the argument.

The trial court addressed Sanders' objection to the above remark at the hearing on Sanders' motion for a new trial as follows:

> I thoroughly read over the closing arguments again, and, actually, I don't believe what [Mirel's counsel] was doing was trying to instruct the jury to disregard the Court's instructions. I do think that her phrasing and the way she made her arguments was about the presentation of the [Sanders'] theories . . . .

The court then concluded, "I disagree with your interpretation, [and] I don't . . . need any further argument on that."

The trial court did not abuse its discretion in so ruling. The court was in the best position to evaluate the impact of counsel's remarks and did so on the record. Its interpretation of counsel's remarks is not untenable. Additionally, there was a curative instruction and "jurors are presumed to follow the court's instructions." *Coogan*, 197 Wn.2d at 808. Sanders does not explain in this briefing how this presumption is rebutted here, nor does he point to evidence of resulting prejudice.

Sanders has not established that the trial court abused its discretion in denying his motion for a new trial on this ground.

C

Next, Sanders argues that "[t]he prejudicial impact of the misconduct was further bolstered by Mr. Mirel's . . . spoliation of the identity of the individual who video recorded the incident from a bystander vehicle with his cell phone, then provided his identity to Mr. Mirel in that regard" and that "[t]his is compounded by the Trial Court's erroneous failure to provide appropriate spoliation sanctions which could appropriately have included a 'spoliation instruction.'" Notably, Sanders does not assign error to the trial court's instructions to the jury; rather, his spoliation argument appears to be an attempt to establish "prejudice . . . warranting the granting of a new trial" based on "the totality of the circumstances." This argument, too, is unavailing.

Spoliation is "the intentional destruction of evidence." *J.K. v. Bellevue Sch. Dist. No. 405*, 20 Wn. App. 2d 291, 304, 500 P.3d 138 (2021) (internal quotation marks omitted). At trial, Mirel testified, "somebody . . . said that if I need a video, he's got it on his phone. And then he gave me his phone number on a piece of paper, but I lost that number . . . ." Sanders proposed instructing the jury on spoliation related to the loss of the witness's contact information, which was opposed by defendants' counsel. Discussing the proposed instruction, the trial court explained, "This is a little bit different [from spoliation cases] insofar as Mr. Mirel never had the video." The court added, "When it comes to spoliation, you're talking about the evidence, and the evidence here is the video of the incident," not

the loss of the contact information of the witness. Following argument, the trial court declined to give the proposed instruction, reasoning, "I read a number of cases . . . analyzing this issue, and . . . it's really the piece of evidence itself that is destroyed through the conduct of the parties, and that's not what happened here" and adding, "the parties are free to argue inferences from the evidence."

Sanders does not explain how the trial court erred or abused its discretion in concluding the loss of the contact information was not spoliation. He instead presumes the trial court's determination is flawed and argues the failure to give the proposed spoliation instruction was "likely outcome determinative" based on cases analyzing how to craft spoliation sanctions *after* a determination of spoliation is made. Nor does Sanders cite or discuss any cases in which the court imposed spoliation sanctions where the alleged spoliator never possessed the spoliated evidence. *See State v. Loos*, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020) ("When a party provides no citation to support an argument, this court will assume that counsel, after diligent search, has found none."). At bottom, this argument does not support Sanders' contention that the trial court abused its discretion in denying his motion for a new trial based on "compounded" prejudice.

D

Sanders also argues Mirel violated several orders in limine. First, Sanders claims Mirel failed to comply with an order in limine prohibiting him from mentioning "insurance." Second, Sanders complains about Porter's violation of an order in limine prohibiting reference to Porter's sexual relationship with Mirel. Like the spoliation issue discussed above, these arguments appear to be an attempt to

- 13 -

establish "misconduct" necessitating a new trial. Both arguments are unpersuasive.

Regarding references to "insurance," the underlying motion was filed by Porter to preclude reference to the amount of any insurance coverage Porter may have had on the vehicle Mirel was driving. Although that motion was granted, the trial court allowed the parties to refer to Mirel's own policy as a driver. While Mirel uttered the word "insurance" during his testimony, these references are distinguishable from the types of references precluded by Porter's motion in limine. They include, for example, Mirel's reference to having a homeowner's insurance policy, his remark that he complies with the requirement that drivers have insurance, and his reference to complying with the police officer's request to provide his driver's license and insurance documents.

Even if Mirel violated the trial court's orders in limine by so testifying, Sanders' appellate briefing does not explain how any such references to "insurance" prejudiced him. We therefore reject this claim. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). Nor does Sanders explain how he was prejudiced by Porter's violation of an order granting his *own* motion in limine prohibiting reference to his sexual relationship with Mirel. *See State v. Collins*, 152 Wn. App. 429, 440 n.27, 216 P.3d 463 (2009) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." (quoting *Palmer v. Jensen*, 81 Wn. App. 148, 153, 913 P.2d 413 (1996))).

Lastly, Sanders points to another order in limine that purportedly "compelled . . . Mirel to provide signature/verification pages for his Interrogatory answers" so that he would not "attempt to disavow" those answers. This, according to Sanders, "is exactly what [Mirel] tried to do at the time of trial, despite the Court's Order prohibiting him from doing so." Contrary to Sanders' argument, Mirel did not disavow the interrogatory answers. Rather, he provided thorough explanations to counsel's questions at trial, as excerpted below:

> Q: Going on, you say [referring to interrogatory responses], 'Plaintiff got out of his vehicle and slammed his fists into the hood of my vehicle. Plaintiff approached my driver's side window and attempted to hit me and choke me.' Those are your words; right?
>
> A: That's what happened, yep.
>
> Q: 'Attempted' means he didn't do it, did he?
>
> A: Just a minute. Can I clear something? He didn't do the --
>
> Q: Answer my question, please, sir.
>
> A: Attempted. I -- is that what I wrote?
>
> Q: Yes.
>
> A: I don't know exactly how to describe this. My . . . lack of proper words, 'attempt' meaning he was in the process. He was -- . . . .
> 　 . . . .
>
> I held him up. I held his wrists. That's what the witness was describing, our position. I got a grip on his wrists, the fists coming into my face as I was coming out [of my car]. . . .
> 　 . . . .
>
> I grabbed his hands and arms to prevent him from harming me.

Mirel's testimony elaborates on an important point: that Sanders was prevented from striking Mirel only because Mirel stopped him by raising his hands in his own

- 15 -

defense. The meaning of Mirel's answer that Sanders "attempted" to hit him required additional explanation, which he was entitled to provide. As the trial court later explained, "[t]rial is an adversarial process, and Mr. Mirel has his own interpretation of the evidence, which quite frequently contradicts with [Plaintiff's counsel's] own interpretation, and it's for the finder of fact to decide what they believe and what they don't." The trial court did not abuse its discretion in so holding.[3]

III

Because Sanders has not established any of the grounds for a new trial under CR 59(a), we affirm the trial court's denial of his motion for a new trial.

Affirmed.

_Feldman, J._

WE CONCUR:

_Díaz, J._          _, ACJ_

---

[3] Although Sanders' briefing also references other examples of alleged "misconduct" and "irregularity," we have carefully reviewed the record alongside Sanders' arguments and Mirel's responses and are not persuaded that any such misconduct or irregularity—alone or in combination—materially affected Sanders' substantial rights such that justice has not been done.