228 P.3d 828 (2010)
Jonathan KUHN, an individual; and Joan Kuhn and Dan Kuhn, husband and wife and their marital community, Respondents,
v.
Bill S. SCHALL, M.D., and Janet G. Schall, husband and wife and their marital community; Richmond Pediatric Clinic, Inc., P.S., a Washington professional service corporation, Appellants.
Jeff Hawley, an individual; Paul Hawley, an individual; and Rich Hawley and Bev Hawley, husband and wife, Respondents,
v.
Bill S. Schnall, M.D., and Richmond Pediatric Clinic, Inc., P.S., a Washington professional service corporation, Appellants.
Daniel Fewel, an individual; and Kathleen Fewel and Joe Fewel, husband and wife, Respondents,
v.
Bill S. Schall, M.D., and Janet G. Schall, husband and wife and their marital community; Richmond Pediatric Clinic, Inc., P.S., a Washington professional service corporation, Appellants.
No. 62554-3-I.
Court of Appeals of Washington, Division 1.
April 19, 2010.
*830 Daniel W. Ferm, Mary H. Spillane, Timothy E. Allen, Bennett Bigelow & Leedon, Seattle, WA, Karen O. Kasey, Hoffman Hart & Wagner, Portland, OR, for Appellants.
Ronald Scott Bemis, Anne Melani Bremner, Peter J. Mullenix, Seattle, WA, for Respondents.
ELLINGTON, J.
¶ 1 Most of the several plaintiffs in this action were awarded some damages, albeit considerably less than they requested. The court granted a new trial on grounds of juror misconduct (material nondisclosure and injection of extrinsic evidence) and misconduct by defense counsel in closing argument. Plaintiffs were not required to show the damage awards were so inadequate as to indicate passion or prejudice in order to seek a new trial on other grounds. The court did not abuse its discretion in granting a new trial, and we affirm.

BACKGROUND
¶ 2 Dr. Bill Schnall started working as a pediatrician at the Richmond Pediatric Clinic in Shoreline, Washington in 1976. Plaintiffs Jeff Hawley, born November 22, 1982, his brother Paul Hawley, born February 24, 1986, Jonathan Kuhn, born November 6, 1986, and Daniel Fewel, born December 11, 1989, became Schnall's patients when they were babies or young boys.
¶ 3 In August 2005, the Medical Quality Assurance Commission formally alleged that Schnall had "violated proper physician-patient boundaries with some of [his] patients, including violations that [were] sexual in nature, and [was] progressively testing boundaries with others."[1] Among the three patients whose cases were discussed in the statement of charges were Jeff Hawley and Daniel Fewel.
¶ 4 Schnall's license was summarily suspended. In March 2006, Schnall stipulated that he "practiced outside the standard of care by violating appropriate physician-patient boundaries" and that he "committed unprofessional conduct in violation of RCW 18.130.180(4) and (24) (abuse of a client or patient)."[2] He surrendered his medical license.
¶ 5 The present lawsuits soon followed. Jeff and Paul Hawley, Jonathan Kuhn, Daniel Fewel, and their parents allege that Schnall conducted excessive and inappropriate genital exams, took excessive and inappropriate sexual history, failed to adhere to appropriate physician-patient boundaries in numerous ways and became overly involved in their lives, improperly prescribed psychiatric medication, and improperly conducted behavior modification therapy in an attempt to groom them for sexual contact. They sued Schnall and the Richmond Pediatric Clinic in three separate lawsuits, later consolidated. The patient-plaintiffs alleged that Schnall's conduct constituted medical negligence, sexual battery, outrage, and negligent infliction of emotional distress.[3] Against the clinic they alleged corporate medical negligence and vicarious liability. The parent-plaintiffs alleged loss of consortium.
*831 ¶ 6 The court allowed plaintiffs to amend their complaints to assert claims for attorney fees under RCW 9.68A.130 based on allegations that Schnall had communicated for immoral purposes with the patient-plaintiffs while they were minors, in violation of RCW 9.68A.090.[4] This question was to be decided after the verdict on the principal claims. The jury was not informed about the court's decision to bifurcate the trial. The court excluded any reference to criminal probable cause or the fact that Schnall was never arrested or charged with any crime. The court also excluded any reference to the fact that plaintiffs' claim of communication with a minor for immoral purposes was related to attorney fees.
¶ 7 Trial lasted more than six weeks. On the afternoon of July 16, 2008, the jury returned its verdict. The jury found that Schnall violated the standard of care as to three of the four patient-plaintiffs (all except Paul Hawley), resulting in damages to each, and that his actions were within his scope of his employment with the clinic. The jury also found that Schnall negligently inflicted emotional distress upon three of the four patient-plaintiffs (all except Jonathan Kuhn), but this distress had proximately caused damages only to Jeff Hawley. The jury found that Schnall's negligent infliction of emotional distress was not within the scope of his employment with the clinic.
¶ 8 The jury found the clinic did not violate its duty to protect the four patient-plaintiffs. Although it found that the clinic negligently supervised Schnall, it found that the clinic's negligent supervision was not a proximate cause of any of the patient-plaintiffs' damages.
¶ 9 The jury awarded damages ranging between $12,400 and $300,000 to all of the patient-plaintiffs (except Paul Hawley) and to the Kuhns and the Fewels (but not the Hawleys). Except for Daniel Fewel, all the plaintiffs were found contributorily negligent and their awards were subject to 15 to 25 percent reductions.
¶ 10 Immediately after the verdict was entered, the court instructed the jury for the second phase of deliberations, the parties argued their positions, and the jury again retired to deliberate.
¶ 11 The defendants had proposed, and the court had rejected, an instruction that would have required the jury to find that Schnall's communications with the minor patient-plaintiffs had "the predatory purpose of promoting [the patient-plaintiffs'] exposure to and involvement in sexual misconduct."[5] The court instead instructed the jury it had to find that the communications were "for immoral purposes of a sexual nature."[6]
¶ 12 During closing argument, however, Schnall's counsel showed the jury an enlarged printout of a Washington Supreme Court opinion containing the "predatory purpose" language. He then argued twice, over sustained objections, that the jury needed to find a "predatory purpose" of promoting "severe sexual misconduct."[7]
¶ 13 The jury began deliberating that afternoon. That evening, the Seattle Times and the Seattle Post-Intelligencer (in their online editions) and at least one television station, KOMO TV, published reports about the phase one verdict and the anticipated purpose of phase two. The July 17 print edition of the Seattle Times repeated the earlier reports on the trial. Both newspapers reported that Schnall had never been charged with communicating with minors for immoral purposes or with any other crime and that the purpose of phase two was to decide whether plaintiffs should be awarded attorney fees. The articles included a quote from one of the plaintiffs' attorneys saying that the fees amounted to $1.8 million.
¶ 14 Like the newspaper articles, the KOMO TV story included reports on the phase one verdict and the fact that Schnall *832 had never been charged. The story also reported that the plaintiffs could request the court to increase the damages awards, referenced the Medical Quality Assurance Commission's findings, and included an on-air statement from Schnall's attorney saying that the commission dropped all charges of sexual motivation against Schnall.[8]
¶ 15 The next day the jury announced its phase two verdict, finding that Schnall did not communicate for immoral purposes with any of the four patient-plaintiffs while they were minors.
¶ 16 Plaintiffs moved for posttrial relief. Among other things, they requested a new trial on grounds of juror and attorney misconduct and damages so inadequate as to indicate passion or prejudice.[9]
¶ 17 The allegation of attorney misconduct was premised on defense counsel's "predatory purpose" closing argument. The allegations of jury misconduct were premised upon two grounds: nondisclosure of material information by two jurors and injection into deliberations of extrinsic evidence in the form of information in media reports and sexual abuse experiences. In support of their motion, plaintiffs submitted declarations from three jurors.
¶ 18 Juror 4 declared as follows: On the final morning of deliberations, a copy of the Seattle Times article was in the jury room. There was a generalized discussion of the media coverage, including references to the two newspaper articles and the KOMO TV report. A juror read the article aloud to seven or eight others then-present, including Juror 4. The information in the article prompted a discussion among the jurors that "the plaintiffs were trying to get more money."[10] Juror 4 did not indicate the timing of these events.
¶ 19 Juror 9 declared as follows: Juror 6 (the jury foreperson) and Juror 1 stated they had seen the television coverage the night before. Juror 1 told those who were considering voting for the plaintiffs, "If you knew what we were voting on you would probably change your vote."[11] A copy of the Seattle Times article was brought into the jury room by a juror. The jurors then began discussing that "the plaintiffs were trying to get more money."[12] Juror 9 read the article aloud to other jurors after the verdict form was filled out but before the jury announced its verdict in court.
¶ 20 Juror 11 declared as follows: During deliberations on the first verdict, Juror 6, the foreperson, "broke down at one point"[13] and revealed she had been sexually abused by a family member over several summers when she was younger. On July 17, 2008, Juror 11 read some of the Seattle Times article before coming to court. Other jurors said they also had read the article and watched the television coverage of the case. The jurors discussed the media coverage, and Juror 9 read the article aloud to the other jurors during deliberations.
¶ 21 Schnall responded with declarations from three other jurors, including the two accused of nondisclosure in voir dire. All three stated that by the time the jurors retired for the evening on July 16, they had reached a verdict favoring Schnall as to three of the four patient-plaintiffs, and the votes were 9 to 3 in favor of Schnall as it concerned Jonathan Kuhn.
¶ 22 Juror 1 declared as follows: On the morning of July 17, Juror 6 mentioned that she saw a brief television clip about the phase one verdict, but what she saw was not discussed. Juror 1 had no recollection of telling anyone that if they knew what they were voting on, they would change their votes. The jurors had no knowledge, although they did speculate, about the purpose *833 of phase two. There was a newspaper in the jury room, but it was folded up and she did not see anyone reading it during deliberations. Juror 9 read part of the article about the phase two verdict to the jurors after the phase two verdict had been read in open court.
¶ 23 After plaintiffs discovered that she and her husband had been defendants in at least two medical negligence cases, Juror 1 provided a supplemental declaration explaining that at the time she filled out the questionnaire, she had no recollection of the lawsuits as she was not substantively involved in them and they occurred 10 to 20 years before.
¶ 24 Juror 6, the jury foreperson, declared she saw a brief snippet on television concerning only the phase one verdict. She asked the next day if anyone else had seen any media coverage and was told she should not talk about it. She therefore did not share with other jurors what she had seen on television. Although there was a newspaper in the jury room on July 17, no one read it during deliberations and there was no discussion about media coverage. Jurors did speculate about the purpose of phase two. It was not until after the supplemental verdict form was complete that Juror 9 read the newspaper story aloud.
¶ 25 Juror 6 explained that during the second or third week of trial, the evidence caused memories to surface of her own childhood sexual abuse by a family member. The memories were extremely distressing and she immediately entered therapy. When she filled out the pretrial jury questionnaire, those memories were still repressed and she honestly answered questions about past abuse in the negative. She did not inform the court about the resurfaced memories because she was not instructed to do so. She shared "very little"[14] about her experience with her fellow jurors, and believed she did so on July 17 when they were discussing the issue of whether Schnall communicated with Jonathan Kuhn for immoral purposes.
¶ 26 Finally, Juror 8 declared that she noticed an article about the case in the newspaper on the morning of July 17 but did not read it. When someone else mentioned the article, another juror reminded that person they were not to discuss any media coverage. There was no discussion of attorney fees during deliberations.
¶ 27 After considering the affidavits and the parties' arguments, the court granted a new trial based upon juror misconduct. The court held that whether intentional or not, the jurors' nondisclosures of childhood sexual abuse and previous experience as a defendant in a medical malpractice case required a new trial.
¶ 28 The court also found juror misconduct in the form of injection of extrinsic information into the deliberations (the media reports about the case and Juror 6's sexual abuse experience).
¶ 29 The court further found that defense counsel committed misconduct in closing argument in the second phase, but did not decide whether that misconduct, by itself, would require a new trial.
¶ 30 The court did not address the adequacy of the damages awards.
¶ 31 The Schnalls and the Richmond Pediatric Clinic (collectively Schnall) appeal.

ANALYSIS
¶ 32 The grant or denial of a new trial is a matter within the trial court's discretion.[15] The court's decision will be disturbed only for a clear abuse of that discretion or when it is predicated on an erroneous interpretation of the law.[16] Greater deference is owed the decision to grant a new trial than the decision to deny a new trial.[17]
*834 ¶ 33 Preliminarily, Schnall argues that the plaintiffs who prevailed on the issue of liability and were awarded damages (all, except Paul Hawley and his parents) were not aggrieved because the court did not find the awards so inadequate as to indicate jury passion or prejudice. Schnall therefore contends they are not entitled to a new trial under Civil Rule (CR) 59. CR 59 states:
On the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
....
(2) Misconduct of prevailing party or jury;....
....
(5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;
....
(7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law.
Although there are no cases defining "party aggrieved" in the context of CR 59, one early Supreme Court case is instructive. In In re Adin's Estate,[18] the court held that the movants were not aggrieved parties where the judgment was fully in their favor: "The issues respecting it were determined in accordance with their contentions, and in accordance with the prayer of their petition. By a new trial they could obtain no more favorable relief than they now have, and plainly have no grievance because of the judgment of which they can legally complain."[19]
¶ 34 It is uncontested that Paul Hawley and his parents, who were awarded no damages, are aggrieved parties. Most of the other plaintiffs were found to be contributorily negligent. It certainly cannot be said that by a new trial they could obtain no further relief. They also are aggrieved.
¶ 35 Daniel Fewel is the only plaintiff who was awarded damages and not found contributorily negligent. Like the other plaintiffs, he moved for a new trial by reason of inadequate damages. The court did not rule on this ground. Schnall argues this omission disqualifies at least Fewel from receiving a new damages trial.
¶ 36 We reject this reading of the rule. Certainly a plaintiff who has been awarded all he or she asked for is not aggrieved. But that is not the case here. That a party has been awarded some relief does not conclusively show that misconduct did not affect the verdict. Further, jury misconduct and damages so inadequate as to indicate passion or prejudice are two separate and distinct grounds for a new trial. Nothing in the language of CR 59 requires the court to find inadequate damages resulting from prejudice before granting a new trial on other grounds, and such a reading of the rule is especially problematic where the award consists largely of general damages. Juror misconduct, both in the form of material nondisclosure during voir dire and in the form of injection of extrinsic evidence into deliberations, implicates a party's right to a fair trial,[20] and the rule recognizes that fact by its treatment of misconduct as a separate and independent ground.
¶ 37 Further, Schnall's interpretation is in conflict with another established principle. When jurors introduce extrinsic evidence into deliberations, the verdict cannot stand unless the trial court is satisfied the evidence had no *835 effect upon the verdict. If the court has any doubt, it must order a new trial.[21]

Juror MisconductMaterial Nondisclosure During Voir Dire
¶ 38 The failure of a juror to speak during voir dire regarding a material fact can amount to misconduct.[22] To obtain a new trial, a party must show the juror failed to answer honestly where a correct response would have provided a valid basis for a challenge for cause.[23]
¶ 39 Here, Juror 6 failed to disclose her childhood sexual abuse experiences and Juror 1 failed to disclose that she and her husband had been defendants in medical malpractice lawsuits. The court accepted the jurors' explanations that the omissions were "honest and inadvertent failures to disclose."[24] The court nevertheless found that accurate answers would have provided a basis for challenges for cause as to both jurors and that their nondisclosure requires a new trial.
¶ 40 A prospective juror must be excused for either actual or implied bias.[25] Actual bias requires "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."[26] Implied bias requires "the existence of the facts [that] in judgment of law disqualifies the juror."[27] One way in which a prospective juror can be impliedly biased is if he or she has "`an interest ... in the event of the action, or the principal question involved therein.'"[28] Because a great variety of fact patterns can arise, a trial court must have a measure of discretion in determining what constitutes an "interest."[29] We see no abuse of discretion in the court's rulings here.
¶ 41 Schnall complains that plaintiffs did not challenge other prospective jurors who disclosed personal experiences with abuse but rather sought to keep them on the panel. This is irrelevant.[30] Voir dire examination serves to protect the parties' rights to a fair trial by exposing possible biases, both known and unknown, on the part of potential jurors.[31]
¶ 42 Schnall also argues the award of damages negates any inference that either juror concealed a bias against the plaintiffs. First, the phase one verdict does not conclusively show lack of bias; it included contributory negligence findings, which favored Schnall, and was followed by the phase two verdict favoring Schnall. But whether bias actually affected the verdict is not the question.[32] The parties are entitled to an impartial panel of jurors.[33]
*836 ¶ 43 The court did not abuse its discretion in holding juror nondisclosure warranted a complete new trial.[34]

Juror MisconductInjection of Extrinsic Evidence into Deliberation
¶ 44 It is misconduct for a juror to introduce extrinsic evidence into deliberations.[35] Such misconduct will entitle a party to a new trial if there are reasonable grounds to believe the party has been prejudiced.[36] The court must make an objective inquiry into whether the extrinsic evidence could have affected the jury's determination, and not a subjective inquiry into the actual effect of the evidence on the jury.[37] Any doubt that the misconduct affected the verdict must be resolved against the verdict.[38]
¶ 45 Extrinsic evidence is "information that is outside all the evidence admitted at trial, either orally or by document."[39] The court concluded that the media coverage of the case and Juror 6's experiences as a victim of childhood sexual abuse could have affected the jury's deliberations. Schnall does not challenge this conclusion as it pertains to phase two, but contends the injection of extrinsic evidence occurred exclusively during phase two deliberations and any new trial should be limited to phase two.[40] Schnall is correct that introduction of extrinsic evidence from media reports occurred only during phase two deliberations. But the court found that "[i]t is not entirely clear whether the juror who failed to disclose the sexual abuse injected that abuse into phase one of the jury's deliberations or into phase two of the jury's deliberations."[41] The court was required to resolve its doubt against the verdict in phase one.[42] The court did not abuse its discretion in holding a new trial is warranted by reason of juror misconduct.

Defense Counsel Misconduct
¶ 46 A new trial may be granted based on the prejudicial misconduct of counsel if the conduct complained of constitutes misconduct, not mere aggressive advocacy, and the misconduct is prejudicial in the context of the entire record.[43] The misconduct must have been properly objected to by the movant and the must not have been cured by court instructions.[44] "`A mistrial should be granted only when nothing the trial court could have said or done would have remedied the harm caused by the misconduct.'"[45]
¶ 47 Schnall concedes that his counsel's reference in his phase two closing argument to the Supreme Court opinion requiring a "predatory purpose" was inappropriate. He nevertheless argues that any misconduct was cured by the court's instruction to disregard it.
*837 ¶ 48 The court was in the best position to evaluate the impact of counsel's misconduct. Jurors had completed six and a half weeks of trial and, instead of being discharged, learned they would need to deliberate further on a new question. Defense counsel then, despite plaintiffs' objections and the court's rulings, misstated the law to the jury twice, using a visual aid to augment the improper argument. In these circumstances, we cannot say the trial court abused its discretion in declining to hold that its instruction to disregard cured the misconduct sufficiently to remove any taint from the verdict.

Additional Argument
¶ 49 Schnall contends the court should not have allowed plaintiffs to amend their complaints to add the claim under RCW 9.68A.130 and should not have submitted the issue to the jury.[46]
¶ 50 The order granting leave to amend the complaint is not part of this appeal.[47] Schnall argues, however, that regardless of our decision to strike the order from the notice of appeal, he may nonetheless raise his arguments under RAP 2.5(a)(1) and (2).[48] Schnall articulated this theory for the first time in his reply brief. We decline to address it.[49]
¶ 51 Affirmed.
WE CONCUR: APPELWICK and BECKER, JJ.
NOTES
[1] Ex. 6 at 2.
[2] Ex. 3 at 2.
[3] The sexual battery and outrage claims were later abandoned.
[4] "[A] person who communicates with a minor for immoral purposes, or a person who communicates with someone the person believes to be a minor for immoral purposes, is guilty of a gross misdemeanor." RCW 9.68A.130.
[5] Clerk's Papers at 4030.
[6] Clerk's Papers at 4132.
[7] Report of Proceedings (RP) (July 16, 2008) at 31-32.
[8] Plaintiffs contended this was an inaccurate statement of the commission's findings in that the commission did not drop any charges, but accepted Schnall's stipulations.
[9] Plaintiffs also asserted that the contributory fault findings and the finding that Schnall did not communicate with minors for immoral purposes were not supported by the evidence.
[10] Clerk's Papers at 4179.
[11] Clerk's Papers at 4169.
[12] Id.
[13] Clerk's Papers at 5001.
[14] Clerk's Papers at 4986.
[15] State v. Jackman, 113 Wash.2d 772, 777, 783 P.2d 580 (1989).
[16] Id. A court abuses its discretion when its decision is "`manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Breckenridge v. Valley Gen. Hosp., 150 Wash.2d 197, 204, 75 P.3d 944 (2003) (quoting State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971)).
[17] Richards v. Overlake Hosp. Med. Ctr., 59 Wash. App. 266, 271, 796 P.2d 737 (1990).
[18] 112 Wash. 93, 95, 191 P. 839 (1920) ("it is only a party aggrieved by a verdict or decision who may move for a new trial").
[19] Id.
[20] See, e.g., McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); United States v. Vasquez, 597 F.2d 192, 193 (1979); Gardner v. Malone, 60 Wash.2d 836, 847, 376 P.2d 651 (1962), opinion amended, 60 Wash.2d 836, 379 P.2d 918 (1963).
[21] Halverson v. Anderson, 82 Wash.2d 746, 749-50, 513 P.2d 827 (1973).
[22] In re Det. of Broten, 130 Wash.App. 326, 337, 122 P.3d 942 (2005).
[23] Id.
[24] Clerk's Papers at 4478. Schnall does not now argue that honest mistakes in responding to voir dire questions cannot support a finding of juror misconduct.
[25] RCW 4.44.170; Carle v. McChord Credit Union, 65 Wash.App. 93, 108, 827 P.2d 1070 (1992).
[26] RCW 4.44.170(2).
[27] RCW 4.44.170(1).
[28] Carle, 65 Wash.App. at 108, 827 P.2d 1070 (quoting RCW 4.44.180(4)).
[29] Id. at 109, 827 P.2d 1070.
[30] See State v. Johnson, 137 Wash.App. 862, 866-67, 870, 155 P.3d 183 (2007) (failure by juror to disclose her daughter's rape held misconduct in case of burglary with sexual motivation indecent liberties, and first degree attempted rape; of eight prospective jurors who disclosed experiences with sexual assault, five were excused for cause, and three allowed to remain on the jury after questioning); State v. Briggs, 55 Wash.App. 44, 47-48, 54, 776 P.2d 1347 (1989) (jurors with similar experiences, their speech disorders, were not challenged peremptorily or for cause by defendant with stutter; concealment of stuttering by juror found to constitute misconduct).
[31] Briggs, 55 Wash.App. at 54, 776 P.2d 1347.
[32] See Dalton v. State, 115 Wash.App. 703, 713, 63 P.3d 847 (2003) (citing cases).
[33] Allison v. Dep't of Labor & Indus., 66 Wash.2d 263, 265, 401 P.2d 982 (1965).
[34] Schnall contends the court ordered a new trial limited to phase one. That is incorrect. See Clerk's Papers at 4483 (nondisclosure during jury selection by Jurors 1 and 6 "independently requires a complete new trial").
[35] Richards v. Overlake Hosp. Med. Ctr., 59 Wash. App. 266, 270, 796 P.2d 737 (1990).
[36] Id. at 273, 796 P.2d 737.
[37] Id. at 273, 796 P.2d 737.
[38] Id.
[39] Id. at 270, 796 P.2d 737.
[40] Schnall also argues that any new phase two trial should be limited to Jonathan Kuhn because Jurors 1, 6 and 8 declared that by the time the jury left for the evening on July 16, it had already reached "no" verdicts as to Jeff and Paul Hawley and Daniel Fewel, and had only to reach a verdict as to Jonathan. To the extent the jurors' declarations state the effect (or lack thereof) of the extrinsic evidence on the verdict, the statements inhere in the verdict and cannot be considered, and the trial court correctly so ruled. See Gardner, 60 Wash.2d at 841, 376 P.2d 651 (affidavits of jurors may be considered only to the extent they do not attest to matters inhering in the verdict); Richards, 59 Wash.App. at 272, 796 P.2d 737 (affidavits of jurors may be considered to the extent they address the fact of misconduct, but not the effect of misconduct).
[41] Clerk's Papers at 4478.
[42] See Richards, 59 Wash.App. at 273, 796 P.2d 737.
[43] A.C. ex rel. Cooper v. Bellingham School Dist., 125 Wash.App. 511, 521, 105 P.3d 400 (2004).
[44] Id.
[45] Id. at 522, 105 P.3d 400 (quoting Aluminum Co. of America v. Aetna Cas. & Sur. Co., 140 Wash.2d 517, 539, 998 P.2d 856 (2000)).
[46] Schnall argues the trial court lacked subject matter jurisdiction to ask whether he violated a criminal statute; that plaintiffs failed to establish that this is an action "arising from violation of" chapter 9.68A RCW (sexual exploitation of children); that Kuhn's and Fewel's exclusive remedies are under chapter 7.70 RCW (actions for injuries resulting from health care); and that by abandoning their intentional tort claims, plaintiffs waived any right they arguably could have to seek a finding as to Schnall's "purpose" in acting negligently.
[47] A commissioner of this court struck the order from the notice of appeal on grounds the order is not appealable as of right and Schnall did not demonstrate why it should be reviewed under RAP 2.3(b) and 2.4(b). Schnall's motion to modify the ruling was denied.
[48] A party may raise for the first time on appeal lack of trial court jurisdiction and failure to establish facts upon which relief can be granted. RAP 2.5(a)(1), (2).
[49] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) (courts need not address an issue first raised in a reply brief).