IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MELISSA KURTZ, individually, | No. 80686-6-I |
| Respondent/ Cross-Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STATE OF WASHINGTON d/b/a UNIVERSITY OF WASHINGTON and UNIVERSITY OF WASHINGTON MEDICAL CENTER, | |
| Appellants/ Cross-Respondents. | |

SMITH, J. — Melissa Kurtz, a disabled woman with an increased risk of bone injury, suffered a serious arm fracture during an assisted transfer from her wheelchair to a table at the University of Washington Medical Center. Kurtz sued the State of Washington and the University of Washington Medical Center (collectively UW) for damages, including the cost of chore services that she required after the injury. Among other claims, Kurtz alleged that (1) UW had committed corporate negligence by failing to provide its employees with the training or tools necessary for safe patient handling and (2) UW had violated the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, by failing to reasonably accommodate her disability. The trial court instructed the jury on both claims. After jury deliberations began, a juror was dismissed for conducting

Citations and pin cites are based on the Westlaw online version of the cited material.

outside research, and the court denied UW's motion for mistrial. The jury found that UW was liable for corporate negligence and denied Kurtz's other claims.

UW appeals the trial court's denial of its motion for mistrial and claims that Kurtz failed to establish both the necessity of her chore services and the standard of care attributable to UW under her corporate negligence claim. Kurtz cross appeals the court's decision not to give a jury instruction defining the term "reasonable accommodation."

We conclude that the trial court did not abuse its discretion by denying UW's motion for mistrial because it was able to instruct the jury to disregard the extrinsic information and received assurances from the jurors that they could do so. Furthermore, viewing the record in the light most favorable to Kurtz, we conclude that she provided sufficient evidence to establish the necessity of her chore services and UW's standard of care. Finally, we conclude that the court did not abuse its discretion by declining to give Kurtz's requested jury instruction. Therefore, we affirm.

FACTS

In December 2015, Kurtz went to the echocardiography lab at the University of Washington Medical Center for an echocardiogram ordered by her primary care provider. Kurtz has osteogenesis imperfecta (OI), commonly known as "brittle bone disease," which causes her bones to break easily. Due to OI, Kurtz, who is about 3 feet 6 inches tall, uses a wheelchair. During her appointment, the UW echosonographer, Margaret Falkenreck, asked Kurtz to transfer to a specialized echocardiogram table that was four to six inches higher

2

than her wheelchair. While Kurtz was generally able to self-transfer to surfaces that were about the same height as her wheelchair, she was unable to self-transfer to the echocardiogram table because it was too high. Testimony differed as to the sequence of events, but, ultimately, another UW echosonographer, Maurizio Corona, came in to help move her. Corona placed his hands on Kurtz and bore some amount of her weight to assist the transfer. During the transfer, Kurtz fractured her upper left arm bone. Due to Kurtz's OI, the fracture never healed, and the bone did not fuse back together. Kurtz sued UW for medical malpractice, corporate negligence, and violation of the WLAD.

Jury trial began on August 6, 2019. Kurtz retained Dr. Nirav Pandya, a pediatric orthopedic surgeon at the University of California San Francisco, as an expert witness. Despite several objections from UW, Dr. Pandya testified about Kurtz's condition, her injury, and UW's standard of care for safe patient handling. Kurtz also introduced into evidence UW's Safe Patient Handling policy, which provided that "manual patient handling . . . shall be restricted to emergency, life threatening or otherwise exceptional circumstances," and required annual training on the policy. Testimony established that UW had not provided training to the echosonographers on this policy. Kurtz testified that her injury severely limited or eliminated her ability to do many daily activities, including dressing herself, brushing her hair, taking a shower, and driving her car. Kurtz's niece also testified that Kurtz was unable or less able to do these activities in the wake of the fracture. Kurtz further testified that she had to hire home care assistance for help with these activities as a result of her injury. Over UW's objection, Dr.

3

Pandya testified that such chore services were reasonably necessitated by her injury.

Toward the close of trial, UW moved for judgment as a matter of law and argued that Kurtz had presented insufficient evidence to support her claims for corporate negligence or economic damages. The court nonetheless instructed the jury on corporate negligence, medical malpractice, and Kurtz's WLAD claim. However, the court declined to give one of Kurtz's requested WLAD instructions defining "reasonable accommodation."

After the jury began deliberations, the court discovered that a juror had searched the Internet to determine how much noneconomic damages should be. The juror had informed the rest of the jury that noneconomic damages are commonly three times the amount of economic damages but could be between one and five times the amount of economic damages. Upon discovering this misconduct, the court asked each juror under oath if they could disregard that information going forward. Each juror agreed that they could. The court discharged the juror who had searched the Internet, brought the alternate juror back, and instructed the recomposed jury to "disregard all previous deliberations and begin deliberations anew." The court denied UW's motion for mistrial.

The jury found that UW was negligent and awarded Kurtz $518,004.34 in economic damages and $962,000.00 in noneconomic damages. The jury rejected Kurtz's other claims, including her WLAD claim.

UW appeals the denial of its mistrial motion and several of the court's decisions relevant to Kurtz's corporate negligence and economic damages

claims. Kurtz cross appeals the court's decision to not instruct the jury about the meaning of reasonable accommodation.

ANALYSIS

UW contends that the court erred by denying its motion for mistrial, by permitting Kurtz to proceed with her claim for economic damages, and by permitting Kurtz to proceed with her claim for corporate negligence. Kurtz contends that the court erred by denying her requested jury instruction explaining reasonable accommodation. We affirm the trial court on all counts.

<u>Jury Misconduct and Motion for Mistrial</u>

UW contends that the trial court erred by denying UW's motion for a mistrial in light of the juror misconduct. The trial court concluded that a mistrial was not necessary because although the juror had committed misconduct, the remaining jurors were confident that they could disregard the extrinsic evidence. We conclude that the court did not abuse its discretion in coming to this conclusion.

A juror commits misconduct if they introduce extrinsic evidence into jury deliberations. <u>Kuhn v. Schnall</u>, 155 Wn. App. 560, 575, 228 P.3d 828 (2010). When this happens, the court must generally "make an objective inquiry into whether the extrinsic evidence could have affected the jury's determination, not a subjective inquiry into the actual effect of the evidence on the jury." <u>Kuhn</u>, 155 Wn. App. at 575. If there are "reasonable grounds" to believe a party has been prejudiced, a new trial is warranted. <u>Kuhn</u>, 155 Wn. App. at 575.

"Deciding whether juror misconduct occurred and whether it affected the

verdict are matters for the discretion of the trial court, and will not be reversed on appeal unless the court abused its discretion." Breckenridge v. Valley Gen. Hosp., 150 Wn.2d 197, 203, 75 P.3d 944 (2003). The trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006). We give greater weight to a decision to grant a new trial than a decision to deny a new trial. Breckenridge, 150 Wn.2d at 204.

In Lockwood v. AC&S, Inc., 109 Wn.2d 235, 241-42, 744 P.2d 605 (1987), a deliberating jury was discussing damages when one juror informed the jury that he had looked up the defendants and determined that they could "well afford to pay." Having discovered this before the jury rendered its verdict, the trial court gave the jury a curative instruction not to consider the financial circumstances of the parties and denied the defendant's motion for a mistrial. Lockwood, 109 Wn.2d at 242. On appeal, our Supreme Court noted that "the trial court's curative instruction to the jury promptly and directly dealt with the juror misconduct[,] . . . significantly reduc[ing] the probability that the misconduct would have any prejudicial effect." Lockwood, 109 Wn.2d at 265. The Supreme Court took note of the trial court's "careful examination" of the proceedings, along with the fact that the jury damages award was substantially lower than the amount requested, in determining that there was "little reason to doubt that the misconduct did not affect the verdict." Lockwood, 109 Wn.2d at 265-66. The court therefore concluded that the trial court did not abuse its discretion by denying the motion for mistrial. Lockwood, 109 Wn.2d at 266.

In this case, the trial court not only instructed the jury to disregard the extrinsic information like the court in Lockwood, it also received sworn assurances from every juror who heard the information that they could set that information aside in their deliberations. The court noted that it "felt that [the jurors] were all very confident that they were and are able to disregard" the extrinsic information. Furthermore, the court dismissed the juror who had committed misconduct, brought in the alternate juror, and directed the jury to begin their deliberations anew. These facts provide an even stronger basis than in Lockwood to conclude that "the extrinsic information . . . had no prejudicial effect."[1] Lockwood, 109 Wn.2d at 266. Therefore, the trial court did not abuse its discretion when it denied UW's motion for a mistrial.

UW disagrees and contends that the court was required to make an explicit finding that UW was not prejudiced beyond a reasonable doubt. While courts are required to grant a mistrial when there is a reasonable doubt as to whether juror misconduct affected the verdict, the trial court is not required to make an explicit finding to this effect. See Gardner v. Malone, 60 Wn.2d 836, 846-47, 376 P.2d 651, 379 P.2d 918 (1962) (new trial should be granted when there is a reasonable doubt whether misconduct affected a material issue); State v. Strine, 176 Wn.2d 742, 755, 293 P.3d 1177 (2013) (A "'trial judge declaring a mistrial is not required to make explicit findings . . . nor to articulate on the record

---

[1] Furthermore, while the ultimate noneconomic damages award was in the broad range of one to five times the economic damages, it was significantly less than three times the economic damages, the standard amount cited by the dismissed juror.

all the factors which informed the deliberate exercise of his discretion.'" (internal quotation marks omitted) (quoting Renico v. Lett, 559 U.S. 766, 774-75, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010))). UW cites no Washington cases stating otherwise. Here, although the court did not make an explicit finding as to whether UW was prejudiced, the record is sufficient to review the trial court's decision and determine that it did not abuse its discretion. We affirm the court's denial of the motion for mistrial.

Claim for Economic Damages

UW alleges that the trial court erred by allowing Kurtz's claim for economic damages to proceed. It assigns error to several of the court's decisions: (1) its decision to admit Dr. Pandya's testimony as to the necessity of Kurtz's chore services, (2) its denial of UW's CR 50(a) and CR 50(b) motions for judgment as a matter of law, and (3) its decision to instruct the jury on past and future economic damages. We disagree.

1. Admission of Dr. Pandya's Testimony

UW moved in limine to exclude testimony from Dr. Pandya "regarding whether Ms. Kurtz's post-fracture home chore services are necessary." The court reserved ruling "for trial pending foundation laid." At trial, UW objected to Kurtz's question as to how the fracture would affect Kurtz's day-to-day activity, which the court overruled, and as to the necessity of the chore services, which the court initially sustained but overruled after more foundation was laid. The

court then denied UW's request to voir dire Dr. Pandya.[2]

Where a court reserves its ruling on a motion in limine regarding the admissibility of evidence, we review the decision that it ultimately makes at trial. Braut v. Tarabochia, 104 Wn. App. 728, 730-31, 733, 17 P.3d 1248 (2001). We review admission of opinion testimony for abuse of discretion. City of Seattle v. Levesque, 12 Wn. App. 2d 687, 698, 460 P.3d 205, review denied, 195 Wn.2d 1031 (2020). "If the basis for admission of the evidence is 'fairly debatable,' we will not disturb the trial court's ruling." Johnston-Forbes v. Matsunaga, 181 Wn.2d 346, 352, 333 P.3d 388 (2014) (internal quotation marks omitted) (quoting Grp. Health Coop. of Puget Sound, Inc. v. Dep't of Revenue, 106 Wn.2d 391, 398, 722 P.2d 787 (1986)).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. "Before allowing an expert to render an opinion, the trial court must find that there is an adequate foundation so that an opinion is not mere speculation, conjecture, or misleading." Johnston-Forbes, 181 Wn.2d at 357.

Here, the first piece of opinion testimony that UW objected to was Dr. Pandya's statement that an unhealed fracture like Kurtz's would

---

[2] UW does not provide specific argument on the court's denial of its request to voir dire. Accordingly, we do not address this issue. Billings v. Town of Steilacoom, 2 Wn. App. 2d 1, 21, 408 P.3d 1123 (2017) ("Failure to provide argument and citation to authority in support of an assignment of error precludes appellate consideration.").

in general . . . affect activities of daily living for using the arm in the way that she normally would use it in the past, whatever that may have been. So if she was depending on that arm a lot for those activities and now that arm is painful and not stable, that's going to impact her in terms of just doing normal activities.

Dr. Pandya had previously explained his expertise to opine on this issue: "As an orthopedic surgeon, we see fractures a lot. And if an individual doesn't have a fracture that heals, it's pretty consistent what we will see in terms of their function down the road. So it's something that I feel very comfortable [discussing]."

We conclude that the court did not abuse its discretion by admitting Dr. Pandya's opinion on the general impacts of such a fracture. During cross-examination, Dr. Pandya conceded that this testimony was "offered . . . in more of a general sense." Dr. Pandya's experience as a doctor dealing with fractures, and specifically fractures that do not heal, provided ample foundation for the court to admit this testimony.

UW next challenged Dr. Pandya's testimony that Kurtz's home care services were reasonably necessitated by her arm fracture. UW objected on the basis that Dr. Pandya was not familiar with Kurtz's needs before the fracture and therefore could not speak specifically to which services were required only as a direct result of the fracture. However, Dr. Pandya stated that he had reviewed Kurtz's deposition to get a sense of her abilities before and after the fracture and that "as an orthopedic surgeon who takes care of individuals [with] upper extremity fractures, I believe that the services that Ms. Kurtz is requesting are consistent with any individual who has a nonunited fracture of their upper extremity." He also explained that in Kurtz's deposition, she "did state that there

are things that she just can't do [anymore] because of the fact that her arm is broken. So I think that the services that she's requested or receiving are reasonable for someone who can't undergo the activities that she can't do now."

While Dr. Pandya's lack of direct knowledge as to Kurtz's prefracture abilities undermines the strength of his testimony, UW "ably raised these foundational challenges for the jury's consideration during . . . cross-examination." Johnston-Forbes v. Matsunaga, 177 Wn. App. 402, 412, 311 P.3d 1260, 1265 (2013), aff'd, 181 Wn.2d 346 (2014). UW's challenge "goes to the testimony's weight, not its admissibility." Johnston-Forbes, 181 Wn.2d at 357 (An "expert's testimony 'not based on a personal evaluation of the subject goes to the testimony's weight, not its admissibility.'" (quoting In re Marriage of Katare, 175 Wn.2d 23, 39, 283 P.3d 546 (2012))). The trial court's decision to admit Dr. Pandya's testimony is at least "'fairly debatable.'" Johnston-Forbes, 181 Wn.2d at 352 (internal quotation marks omitted) (quoting Grp. Health Coop., 106 Wn.2d at 398). We conclude that the court did not abuse its discretion.

2. Denial of Motions for Judgment as a Matter of Law

UW next alleges that the trial court erred by denying UW's CR 50(a) motion to dismiss Kurtz's economic damages claim and its subsequent CR 50(b) motion for judgment as a matter of law, or alternatively for a new trial. UW contends that because Dr. Pandya had not examined Kurtz prior to her injury, his testimony was insufficient to establish that Kurtz's chore services were a necessary result of her injury. We disagree.

We review a motion for judgment as a matter of law using the same standard as the trial court. Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997). The court should grant a motion for judgment as a matter of law when, viewed in the light most favorable to the nonmoving party, "there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Sing, 134 Wn.2d at 29. However, "'[i]f there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.'" Douglas v. Freeman, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991) (internal quotation marks omitted) (quoting Lockwood, 109 Wn.2d at 243).

A plaintiff is entitled to damages that are "the direct, natural, and proximate consequences of the wrongful act . . . and such as are established with reasonable certainty." Dyal v. Fire Cos. Adjustment Bureau, 23 Wn.2d 515, 521, 161 P.2d 321 (1945). "Prior to an allowance for the cost of future medical care, evidence must indicate the care will be necessitated by the plaintiff's injury. Once liability for damages is established, a more liberal rule is applied when allowing assessment of the damage amount." Erdman v. Lower Yakima Valley, Wash. Lodge No. 2112 of B.P.O.E., 41 Wn. App. 197, 208, 704 P.2d 150 (1985) (citations omitted). While the necessity of medical expenses are often established through expert testimony, Lakes v. von der Mehden, 117 Wn. App. 212, 219, 70 P.3d 154 (2003), evidence of suffering can also "tend[ ] to show the

necessity for the services."[3]  Howells v. N. Am. Transp. & Trading Co., 24 Wash. 689, 694, 64 P. 786 (1901).

In Maurer v. Grange Insurance Ass'n, 18 Wn. App. 197, 202-03, 567 P.2d 253 (1977), the trial court concluded that evidence of damages was properly considered by the jury where the plaintiff's doctor testified that the accident caused pain and other symptoms that required medical care, and the plaintiff testified that "the bills were for medical care and directly related to the injuries from the accident."  We noted that the plaintiff was not required to prove the causal connection as a matter of law but needed only to "produce sufficient evidence of causal connection to go beyond speculation and conjecture," and concluded that the plaintiff had done so.  Maurer, 18 Wn. App. at 203.

Here, viewing the evidence in the light most favorable to Kurtz, sufficient evidence supports the claim for economic damages.  UW challenges the necessity of Kurtz's home chore services, claiming that Kurtz failed to provide sufficient evidence that her fracture necessitated these services.  In denying UW's first motion, the court concluded that there was substantial evidence supporting the necessity of these services, in light of both Dr. Pandya's expert opinion and the lay testimony concerning Kurtz's abilities.  The court discussed the "lay testimony of Ms. Kurtz and her niece Amanda, who very clearly indicated that there were deficits post injury that did not occur pre injury with regards to her

---

[3] Kurtz contends that her home chore services were not medical expenses and therefore the standard for medical expenses need not apply.  While it appears that medical testimony was useful to determine the necessity of these expenses, we need not address this issue because there is sufficient evidence even under the standard for medical damages.

ability." It noted that this was complemented by the testimony of Dr. Pandya, who, although he "had no knowledge of Ms. Kurtz prior to the injury," was able to give his expert opinion "that her injury[,] . . . as an unhealed fracture, was consistent with any individual who has a nonunited fracture of an upper extremity and . . . how that would affect anybody and decrease one's function." We agree that, in light of the complementary lay and expert testimony, Kurtz established sufficient evidence to allow the jury to consider the necessity of economic damages "beyond speculation and conjecture." Maurer, 18 Wn. App. at 203.

### 3. Instruction on Economic Damages

UW next challenges the court's decision to instruct the jury on economic damages. "A defendant is entitled to have the jury instructed on her theory of the case when there is evidence to support the theory." State v. Jarvis, 160 Wn. App. 111, 120, 246 P.3d 1280 (2011). "When determining whether the evidence was sufficient to support giving an instruction, we view the evidence in the light most favorable to the party requesting the instruction." Jarvis, 160 Wn. App. at 120. Because we have already concluded that there was sufficient evidence supporting the necessity of Kurtz's chore services to allow her claim to proceed, we also conclude that the court did not err by instructing the jury on these damages.

### Corporate Negligence Claim

Finally, UW alleges that the court erred by allowing Kurtz's corporate negligence claim to proceed, again challenging the court's evidentiary decisions,

instructions to the jury, and ruling on UW's motion for judgment as a matter of law, as well as its pretrial summary judgment order. We disagree.

1. Admission of Dr. Pandya's Testimony

UW challenges the court's admission of additional portions of Dr. Pandya's testimony, alleging that there was not sufficient foundation to support it. We apply the same standard as in the evidentiary discussion above, and we disagree.

First, UW objected to Dr. Pandya's testimony regarding the importance of a hospital having the right equipment available for patients with disabilities: "It's extremely important, in order to provide the best care for a patient, to have the equipment that you need to actually do what you need to do. So it's one of the most critical parts of what we do as a physician." This statement was supported by several of Dr. Pandya's previous statements that were not objected to by UW. Specifically, Dr. Pandya had testified that he had worked at 10 or 11 hospitals, that a large portion of his practice dealt with patients with disabilities, that hospitals make patient safety important to clinicians daily, and that patient safety was "part of our minute-by-minute existence in the hospital."[4] Given Dr.

---

[4] UW seems to contend that it made a standing objection to all of Dr. Pandya's testimony on this issue through its motion for summary judgment. When a motion in limine to suppress evidence is denied, the moving party has a standing objection to that evidence which can be raised on appeal. Garcia v. Providence Med. Ctr, 60 Wn. App. 635, 641, 806 P.2d 766 (1991). Here, UW made no motion in limine regarding Dr. Pandya's testimony. Contrary to UW's claim that "the trial court's denial of summary judgment was necessarily premised on a determination" that Dr. Pandya's testimony was admissible, the court ruled only that there were questions of fact about the corporate negligence claim that justified proceeding to trial. Because the trial court had not expressly ruled that Dr. Pandya's testimony was admissible, we conclude that UW preserved its right

Pandya's foundational testimony regarding his experience in hospitals, his testimony on the importance of a hospital having the right equipment for safe patient handling is not "mere speculation, conjecture, or misleading," and the court did not abuse its discretion by admitting it. Johnston-Forbes, 181 Wn.2d at 357.

Next, UW assigns error to Dr. Pandya's testimony that it is "absolutely critical" that hospitals train their staff on their safe patient handling policies. Dr. Pandya's prior statements also establish the foundation for this testimony. In addition to his earlier testimony regarding his experience working in hospitals and the importance of patient safety, Dr. Pandya also testified that it is important for hospitals to have safe patient handling policies "so that care can be standardized." UW did not object to this foundational testimony. Again, the court did not abuse its discretion by admitting Pandya's testimony that training on safe patient handling was important because it was not "mere speculation, conjecture, or misleading." Johnston-Forbes, 181 Wn.2d at 357.

2. Instruction on Corporate Negligence

UW next claims that the court erred by instructing the jury on corporate negligence.[5] Specifically, it alleges that Kurtz failed to establish the hospital's

_____

to appeal only the admission of those portions of Dr. Pandya's testimony that it objected to at trial.

[5] UW also challenges the court's denial of its summary judgment motion and for judgment as a matter of law. These orders are not properly before us.

First, UW cannot appeal the summary judgment order. "When a trial court denies summary judgment due to factual disputes and a trial is subsequently held on the issue, the losing party must appeal from the sufficiency of the evidence presented at trial." Caulfield v. Kitsap County, 108 Wn. App. 242, 249 n.1, 29 P.3d 738 (2001); see also DGHI, Enters. v. Pac. Cities, Inc., 137 Wn.2d

standard of care. We again review the record in the light most favorable to Kurtz, and we conclude that the instruction was supported by sufficient evidence.

In a corporate negligence claim, the hospital's standard of care "is based on proof of the customary and usual practices" among hospitals. Douglas, 117 Wn.2d at 248. This standard of care may be defined by the Joint Commission on Accreditation of Hospitals' accreditation standards, the hospital's bylaws, or statute. Douglas, 117 Wn.2d at 248-49. "Usually, the standard of care must be established by expert testimony." Douglas, 117 Wn.2d at 249.

Here, Dr. Pandya testified that the safe patient handling standard of care was a national standard, that safe patient handling policies "help to establish a standard of care," and that UW's failure to provide a lower table or safe transfer method for Kurtz, along with UW's failure to train its employees in safe patient handling techniques, constituted negligence and caused Kurtz's injury. UW did not challenge this testimony. UW objects that Dr. Pandya was not a hospital

---

933, 949, 977 P.2d 1231 (1999) ("'The issue can be reviewed after trial in an appeal from final judgment.'" (quoting Rodin v. O'Beirn, 3 Wn. App. 327, 332, 474 P.2d 903 (1970))).

Second, the CR 50(b) order is not before us because UW did not file a CR 50(a) motion on the issue of corporate negligence. "[A] party must file a motion for a judgment as a matter of law *before* submitting the case to the jury if the party wishes to *renew* its previous motion after the jury returns a verdict." Millies v. LandAmerica Transnation, 185 Wn.2d 302, 314-15, 372 P.3d 111 (2016); CR 50. The sole case UW cites on this issue does not state otherwise. Kaplan v. Nw. Mut. Life Ins. Co., 115 Wn. App. 791, 804 & n.6, 65 P.3d 16 (2003) (holding that court could review preverdict summary judgment denial order because it presented an issue of law and that appellant was not required to make any CR 50 motions to preserve the issue for appeal).

Despite these procedural issues, we still address the ultimate question presented by UW—whether Kurtz provided sufficient evidence to support her corporate negligence claim—by addressing the jury instructions on corporate negligence.

administrator and did not have knowledge of hospital administration, but we are not persuaded that administrative experience specifically is necessary to speak to the "customary and usual practices" of hospitals. Douglas, 117 Wn.2d at 248. Combined with the testimony discussed above and the UW Safe Patient Handling policy requiring annual training and discouraging manual lifts, there is sufficient evidence, viewed in the light most favorable to Kurtz, to establish UW's standard of care. Therefore, the court did not err by presenting Kurtz's corporate negligence claim for consideration by the jury.

Rejected Instruction on Reasonable Accommodation

On cross appeal, Kurtz claims that the trial court erred by declining to give a proposed instruction explaining the term "reasonable accommodation" under the WLAD. We disagree.[6]

We review jury instructions de novo for errors of law and consider instructions to be sufficient if they allow counsel to argue their theory of the case, are not misleading, and as a whole properly instruct the trier of fact on the applicable law. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 860, 281 P.3d 289 (2012). Instructions that fail to meet these criteria require reversal if the instructions prejudice a party. Anfinson, 174 Wn.2d at 860. By contrast, a court's "refusal to send a proposed instruction to the jury is a discretionary decision reviewed for abuse of discretion." In re Det. of Pouncy,

---

[6] We reject UW's allegation that Kurtz waived this issue because she later amended the instruction but ostensibly challenges the court's refusal to give her original proposed instruction. Kurtz properly challenged the refusal to give the amended instruction, and it is the amended instruction that we review on appeal.

168 Wn.2d 382, 390, 229 P.3d 678 (2010). Trial courts do not need to define terms in instructions that are self-explanatory or commonly understood, but they must define technical words and expressions. Pouncy, 168 Wn.2d at 390. "Whether a word is technical in nature is a question within the discretion of the trial court." Pouncy, 168 Wn.2d at 390. Furthermore, "[t]he trial court need never give a requested instruction that is erroneous in any respect." Vogel v. Alaska S.S. Co., 69 Wn.2d 497, 503, 419 P.2d 141 (1966).

Here, the trial court did not abuse its discretion by failing to give Kurtz's proposed instruction because the instruction contained an error. The proposed instruction mostly quoted a regulation interpreting reasonable accommodation under WAC 162-26-080. However, it also included a statement that "[t]he duty to reasonably accommodate is an affirmative duty that arises as soon as the University of Washington or its agents or employees becomes aware of a person's disability."[7] This statement is a misstatement of the law because the duty to reasonably accommodate arises only if "same service would prevent the person from fully enjoying the place of public accommodation," regardless of when the entity becomes aware of the disability. WAC 162-26-080(1). Because Kurtz's proposed instruction misstated the law, the court was not required to give it. Vogel, 69 Wn.2d at 503.

---

[7] In support of this statement, Kurtz cites Goodman v. Boeing Co., 127 Wn.2d 401, 408, 899 P.2d 1265 (1995), an employment discrimination case, and 6A Washington Practice: Washington Pattern Jury Instructions: Civil 330.34 (7th ed. 2019), discussing employment discrimination.

Kurtz disagrees and contends that we should review the court's failure to define "reasonable accommodation" even if her instruction partially misstated the law. To support her contention, she cites Hopkins v. Seattle Public School District No. 1, 195 Wn. App. 96, 380 P.3d 584 (2016), and Quynn v. Bellevue School District, 195 Wn. App. 627, 383 P.3d 1053 (2016). In Hopkins, the appellant objected to the court's failure to give his proposed instruction defining a school district's duty to protect a student from harm. 195 Wn. App. at 105. However, he also objected generally to the court's refusal to give any jury instruction on this duty. Hopkins, 195 Wn. App. at 105. We held that although the appellant's proposed instructions "contained more language than was appropriate," because he also objected to the court's failure to give an instruction on a school district's duty, we could properly review the instructions as given to determine whether they were erroneous. Hopkins, 195 Wn. App. at 105.

The same issue was raised in Quynn, where the appellants' proposed instruction on the school district's duty contained more language than was appropriate. 195 Wn. App. at 643. However, because they objected not only to the court's refusal to give their requested instruction, but also to the erroneous instructions ultimately given by the court, we held that we could appropriately review the court's jury instructions. Quynn, 195 Wn. App. at 643.

This case is distinguishable from both Hopkins and Quynn because in those cases, the appellants' objections put the court on notice that its final jury instructions misstated the law. Here, there is no contention that the court's instructions, as given, misstated the law. Therefore, we conform to the usual rule

that the "trial court need never give a requested instruction that is erroneous in any respect." Vogel, 69 Wn.2d at 503. The trial court did not abuse its discretion by declining to give the proposed instruction.

Finally, Kurtz claims that she should be awarded attorney fees under RCW 49.60.030(2), which provides attorney fees to a person who substantially prevails on their WLAD appeal. See Carle v. McChord Credit Union, 65 Wn. App. 93, 111, 827 P.2d 1070 (1992) (applying RCW 49.60.030 to attorney fees on appeal). Because Kurtz does not prevail on her WLAD claim, she is not entitled to attorney fees.

We affirm.

_____

WE CONCUR:

_____    _____

21